FRAZER *v.* HOVEY.

1. VENDOR AND PURCHASER—LAND CONTRACT—TIME—WAIVER.
    Where the vendor in a land contract neglected to furnish an abstract, as he had agreed, at the date named for closing the deal, and both parties continued to negotiate without claiming a forfeiture, the time for consummating the contract was waived.

2. SAME—LAND CONTRACTS—TIME FOR PERFORMANCE—ESSENCE OF CONTRACT.
    The time of performance of a land contract may be extended by parol, especially where time is not expressly of the essence of the contract.

3. SPECIFIC PERFORMANCE—LAND CONTRACTS—TENDER.

   Where the vendee appeared at the appointed time and place ready and willing to pay, and the vendor failed to appear, sufficient tender was made to entitle the vendee to specific performance of a land contract, and it was not necessary to prepare and tender a deed to be executed by the vendor.

4. SAME—EVIDENCE—MODIFICATION.

   Where the evidence was sufficient to justify a decree in the court below for specific performance the same will be affirmed, with such modification as may be required from the fact that all the purchase money is now past due.

Appeal from Wayne; North, J., presiding. Submitted January 15, 1917. (Docket No. 133.) Decided March 29, 1917.

Bill by John P. Frazer against Frank D. Hovey for specific performance of a land contract. From a decree for plaintiff, defendant appeals. Affirmed.

*Frank D. Andrus,* for appellant.

*Harold H. Emmons,* for appellee.

STONE, J. The bill of complaint herein was filed to compel the specific performance by the vendor, the defendant, of a land contract, admittedly duly entered into by the parties and reading as follows:

"Agreement made this fourth day of October, 1915, between Frank D. Hovey of Detroit, Michigan, hereinafter described as the party of the first part, and John P. Frazer, of the same place, hereinafter described as the second party.

"Witnesseth: That the party of the first part in consideration of the within covenants of the party of the second part and of two hundred ($200.00) dollars hereby deposited as a showing of good faith, and which shall be applied on the purchase price upon closing of the deal, agrees to sell and convey, and the party of the second part, in consideration of the within covenants of said first party, agrees to purchase

all that certain piece or parcel of land, with the buildings and improvements thereon, situated in the city of Detroit, county of Wayne, and State of Michigan, and further described as follows: Lot No. 282 and the easterly five (5) feet of 283 of Woodward Park subdivision, according to the plat thereof recorded in the office of the register of deeds for the county of Wayne in Liber 22 of Plats, page 94. For the consideration of seventy-nine hundred ($7,900.00) net dollars, payable to the said first party as follows: Two thousand ($2,000.00) dollars upon delivery of the land contract, and the balance as follows, to wit: Fifty-nine hundred ($5,900.00) on or before June 1, 1916.

"Said first party hereby agrees to furnish to said second party an abstract, extended to date, showing merchantable title and to convey said premises by a good and sufficient warranty deed.

"It is mutually agreed that the deal shall be closed on or before November 1, 1915. It is understood by the parties hereto that the Stormfeltz-Lovely Company were the inducing cause of this deal.

"No verbal agreement shall be binding on either party hereto.

"The stipulations aforesaid are to apply to and to bind the successors, heirs and assigns of the respective parties.

"Witness the hands and seals of the above parties.

"FRANK D. HOVEY,
"Party of the First Part.
"JOHN P. FRAZER,
"Party of the Second Part.
"In presence of REX HUMPHREY, Salesman."

Plaintiff had for a number of years been engaged in the North Woodward avenue district of the city of Detroit in the business of erecting high-grade residences. Rex Humphrey (a real estate dealer connected with the Stormfeltz-Lovely Company) called to plaintiff's attention the lot in question, which is located on Chicago boulevard, a high-class and highly restricted residence street. Humphrey negotiated the sale, prepared the contract, took it to the plaintiff for signature, and then to defendant, together with plaintiff's

check for $200.  Thereupon defendant gave Humphrey
a receipt reading as follows:

. "DETROIT, MICH., Oct. 4, 1915.
"Received of Rex Humphrey two hundred dollars
($200) first payment on lot 282 and easterly five (5)
feet of lot 283, Woodward Park subdivision · balance
payable per agreement.
                            "FRANK D. HOVEY."

Humphrey then asked defendant for an abstract,
and defendant said the abstract was in the office of
the Newberry estate.   There is a conflict. in the testi-
mony at this point.   Defendant testified:

"I told him that I wouldn't get an abstract for him
until the deal was closed, or until the title was taken,
and the final payment made, then I would.   He said,
'John,' meaning plaintiff, 'wants an abstract,' and I
replied, 'That is all right, but I will not furnish an
abstract now.'   He said, 'Will you have any objections
to my getting it?'   I said, 'I have no objections, but
it is up to you.'   He said, 'I will take care of that.'
I said, 'I will have absolutely nothing to do with the
abstract at this time.' "

Humphrey testified that, because his office was in
the same building as that of the Newberry estate, he
offered to save defendant the trouble of going after
it, by getting the abstract for defendant from ·the
Newberry estate.   But the Newberry estate refused
to do anything about the abstract, except on defend-
ant's order, and that defendant then telephoned the
person in charge of said estate instructing him to
bring the abstract down to date, which was done.   In
the meantime, the 1st day of November, the date
named for closing the deal, had passed.   When the
abstract was ready for examination, the Newberry
estate refused to deliver it except upon defendant's
order, and, upon Humphrey reporting this fact to the
defendant, the latter gave Humphrey an order reading
as follows:

*"Mr. Smith:*

"Kindly let the bearer have the abstract for the sixty-five foot lot on Chicago boulevard, and oblige. Dated Detroit, November 12, 1915.

"Frank D. Hovey."

Humphrey got the abstract and delivered it to plaintiff, who had it examined by his attorney. The latter's opinion disclosed that defendant did not have legal title to the property, but that the title was in the Newberry estate. At this point the plaintiff testified as follows:

"I did not know that before when I signed the agreement. When I discovered it, I immediately called Mr. Hovey, and told him I had just gotten an opinion from my lawyer, and found that he didn't have title to the property. Mr. Hovey seemed much surprised, and said: 'There must be some mistake.' * * * He said he would attend to it right away. Then I called him up about a couple of days afterwards, and told him I was anxious to get that deal closed, because I was going East Thanksgiving time, and I was anxious to close that deal before I went, and he said, 'Don't worry.' I returned about the 2d or 3d or 4th of December. I tried to get Humphrey, and I tried to get Mr. Hovey on the phone to find out whether he had recorded that deed, and couldn't reach him. I got Humphrey busy. I couldn't get him, and I figured it was up to him, his agent, to run it down, and so I put it up to Mr. Humphrey. He came back and said all Mr. Hovey had was a contract with the Newberry estate. He said that Hovey owed about $3,200. I wanted to try and persuade Mr. Hovey, if I could, to get the title in himself; that he understood the business I was in, and I was going to build a house that I would sell for from $30,000 to $35,000 on the property, and I would feel much safer to have Mr. Hovey have title to the property."

Plaintiff testified, also, that he offered to pay, not only the $2,000 called for by the contract, but also an additional $1,200, so that defendant could pay the balance which he owed to the Newberry estate and

take title in himself. Negotiations looking to this end were begun, but defendant delayed definite answer until December 18th, when he wrote the following letter:

"HOTEL ELDORADO.
"DETROIT, MICH., Dec. 18, 1915.
"JOHN P. FRAZER CONSTRUCTION CO.,
    "523 Majestic Building,
        "City.
"*Gentlemen:*
    "Your option on lot No. 282 and easterly 5 feet of lot 283 of Woodward Park subdivision according to the plat thereof, recorded in the office of the register of deeds for the county of Wayne in Liber 22 of Plats, page No. 94, has expired on November 1, 1915.

    "Therefore your deposit by check for $200 is forfeited and the option void according to the agreement signed on Oct. 4, 1915. Although by rights entitled to the forfeited deposit, I am not inclined to take advantage of it and I am holding your check at your disposal at my office in the Hotel Eldorado, upon return of the abstract to the Newberry estate.

    "With best regards and compliments of the season,
I am                    Yours very truly,
                            "FRANK D. HOVEY."

The evidence showed that this letter was not mailed until 9:30 p. m. of December 19th. Both the plaintiff and Humphrey testified that, upon the plaintiff receiving this letter, they at once called on defendant, who said that he was ready to go ahead with the deal and have it closed up, and told plaintiff to call in a day or two and he would let him know whether or not he would go and pay the $3,200 or would insist on the original deal. Several further interviews, personal and by phone, took place between the parties during the next few days. Finally, according to the testimony of the plaintiff, the defendant told him that he ought to pay more money for the land, and after some discussion defendant agreed to meet plaintiff at 2 o'clock of that day. At 2 o'clock defendant telephoned plain-

tiff that he "was sticking to the original letter and the deal was all off," whereupon the plaintiff sent to defendant the following:

"DETROIT, MICH., Dec. 21, 1915.
"MR. FRANK D. HOVEY,
   "Eldorado Apartments,
      "Detroit, Mich.
"*Dear Sir:*.
"Received your message this afternoon transmitted to me apparently by the elevator boy, and I hereby notify you that I will hold you to the terms of the contract on Chicago boulevard, and will take legal proceedings to hold you to same, having been put to the expense, I shall hold you for the expense for your refusal in carrying out the contracts.
                "Yours truly,
                      "JOHN P. FRAZER."

The plaintiff was ill until after Christmas. On December 24th, Humphrey, according to his testimony, saw defendant, and, upon being informed that plaintiff was ready to go ahead with the deal, the defendant said:

" 'Well, I have decided that John is the man to have that lot,' and I said, 'Now Mr. Frazer is sick in bed, unable to leave his bed today, but Monday we will meet you and close it up,' and he said, 'You just tell John not to worry at all, as everything is all right; that he shall have the lot.' "

That defendant thereupon appointed Monday, December 27th, at 10 o'clock a. m., to close the deal, and defendant phoned plaintiff postponing the meeting until 2 p. m.; that at 2 o'clock plaintiff and Humphrey called at defendant's office prepared to pay $3,200 if defendant would grant plaintiff's request, or $2,000 if defendant refused the request and insisted on the terms of the original contract. Defendant was not in his office, and plaintiff was unable to learn where he was, or when he was expected to return. The plain-

tiff and Humphrey both testified that, at no time did plaintiff refuse to close the deal on the terms of the contract, but that he did urge defendant to allow him to pay enough additional to enable defendant to take title, and thus justify plaintiff in proceeding to erect a costly house on the lot.

There is considerable conflict in the testimony. But an examination of the testimony of defendant shows that he did not treat time as of the essence of the contract, for he testified that after November 1st he was ready to go ahead with it, and that even down to the day this suit was started the plaintiff "could have had that property if he had come up and paid his money, and carried out the contract," and that he would have taken the money on December 27th, but said there was a misunderstanding as to the hour of the meeting. Defendant testified as follows:

"*Q.* But still you were ready at that time to close on the terms of the original contract, if he had given you the $2,000?

"*A.* Yes, I would have done it if he had come. I understood the appointment was at 3:30.

"*Q.* And apparently they thought it was 2 o'clock?

"*A.* It seems that way."

Defendant's witness Walter A. Fry was at defendant's office when the plaintiff and Humphrey called on December 27th. He testified:

"Both of the gentlemen came in, and Mr. Hovey was not there. They simply asked for Mr. Hovey, and they then went away. I heard Mr. Hovey say that he would not deviate from his original contract; that he would live up exactly, still, to the terms of the contract, and give them a show. Some time was mentioned, 3 o'clock, or something like that, to go ahead and give him the money, pay him the balance, and go ahead according to the first agreement that was closed. * * * There was one occasion, about 5 minutes previous to the service of the injunction, that I overheard a telephone conversation, in which I heard Mr.

Hovey say that he would still be ready to go ahead, if they would come over and close the thing up."

The parties having failed in their proposed meeting of December 27th, the plaintiff evidently became suspicious that defendant might sell the lot to others, and promptly started this suit. There is considerable confusion and contradiction in the testimony of the defendant. The learned circuit judge, who saw and heard all of the witnesses (save one) testify, found the facts to be as claimed by the plaintiff, and decreed specific performance of the contract. The defendant has appealed.

It is contended by defendant that the plaintiff forfeited the contract, by not complying with its terms, and that time was of its essence.

We are of opinion that defendant first breached the contract by not furnishing the abstract in accordance with its terms, and for this reason, and others covered by the testimony, the deal was not closed "on or before November 1, 1915," the time named in the contract therefor. By the conduct of the parties this time was waived, and they continued to negotiate down to the day the bill was filed.

Defendant's counsel insists that the witness Humphrey was the agent of the plaintiff, and not of the defendant. We do not think the matter controlling.

Time of performance of a contract may be extended by parol, and this is especially true where time is not expressly made the essence of the contract. *Loveridge* v. *Shurtz*, 111 Mich. 618 (70 N. W. 132). We think that was done here. By his own testimony, we think defendant understood that the contract was still in existence, and that he agreed to close it on December 27th. Defendant contends that no sufficient tender was made by plaintiff.

When the vendee appears at the appointed time and place ready and willing to pay, and the vendor fails

to appear, sufficient tender has been made, and it is not necessary to prepare and tender a deed to be executed by the other party. *Daily* v. *Litchfield,* 10 Mich. 29; 36 Cyc. p. 706.

There was, in our opinion, sufficient evidence to warrant the decree below, and the same is affirmed, with such modification as may be required from the fact that the whole amount of the purchase money is now past due. The plaintiff will recover his costs to be taxed, the same to be deducted from the amount due defendant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.