SHARRAR *v.* NESTLE.

1. ASSUMPSIT—COMMON COUNTS—ACTION ON CONTRACT.
   Where a special contract has been fully executed by one party and nothing remains to be done but pay money, recovery may be had on the common counts.

2. BROKERS — COMMISSIONS — COMPLIANCE WITH CONTRACT — DIRECTED VERDICT.
   In an action by real estate brokers for their commission on the sale of defendants' farm, where it appears that the contract prepared by the brokers, signed by the prospective purchaser, and presented to defendants for their acceptance was not in compliance with the terms in the listing contract, a verdict was properly directed in

favor of defendants, since it was plaintiffs' duty to show that they had complied with the terms of the listing contract before they were entitled to their commission.

Error to Gratiot; Moinet (Edward J.), J. Submitted January 23, 1923. (Docket No. 79.) Decided April 27, 1923.

Assumpsit by George E. Sharrar and Charles E. Watson, copartners as Sharrar & Watson, against Robert F. Nestle and another for commissions on the sale of a farm. Judgment for defendants on a directed verdict. Plaintiffs bring error. Affirmed.

*Charles H. Goggin* (*William A. Bahlke*, of counsel), for appellants.

*Charles W. Giddings* and *O. G. Tuttle*, for appellees.

MOORE, J. The plaintiffs brought this action to recover a broker's commission for the sale of defendants' farm. In the spring of 1920 the plaintiff firm had in their employ a salesman, Mr. Mann, who obtained from the defendants Exhibit A, which is spoken of as a listing contract, which gave to the plaintiffs such rights as they possessed to sell the farm. It was the claim of the defendant that this contract was not to be effective for 30 days, and was not to be effective at all if during the 30 days defendant notified the plaintiffs he did not desire to sell the farm, and that he gave them such notice within the 30 days. Some time in September Mr. Sharrar, acting for the plaintiffs, took Mr. Hickle to the farm of Mr. Nestle. Mr. Nestle said he wouldn't sell the farm, wouldn't talk with them about it, but said he would meet them at Mr. Giddings' office in St. Louis. Mr. Giddings was his lawyer. The meeting was had. The defendant persisted in his refusal to sell the farm, and this suit

was brought.    The declaration consists of two counts. The first count is for the breach of the listing contract, Exhibit A, by the parties for the sale of defendants' farm; the second is the common counts in assumpsit.    The plea is the general issue with notices, which set up five grounds of defense.    At the conclusion of all of the testimony the trial judge was of the opinion that the plaintiffs had not met the conditions contained in the listing contract, and directed a verdict in favor of the defendants.    The case is brought into this court by writ of error.

A large amount of testimony was permitted by the trial judge tending to show that the so-called listing contract did not contain all of the contract, that it was not to be effective for 30 days, and not at all if the plaintiffs were notified within the 30 days that defendant did not want to sell, and that such notice was given.    This is said to be error upon the theory that it permitted a written contract to be changed or contradicted by oral proofs.    Much space is devoted in the brief to this contention.    Inasmuch as the trial judge ignored this testimony and based his action upon his construction of the two written instruments, we think it unnecessary to spend further time with this feature of the case.

Counsel for the appellants contend that when defendant attempted to withdraw the listing contract that he was told it was too late, that the farm had already been sold to Mr. Hickle, that the duties of the plaintiffs were then complete, and no duty whatsoever devolved upon them to tender to the defendants a written contract.

We quote from the brief:

"Our court has repeatedly held that where a special contract has been fully executed by one party and nothing remains to be done but pay money, recovery may be had on the common counts;" citing many cases."

The law is as stated by counsel but the query arises whether it is applicable to the facts disclosed by this record. The special count in the declaration referred to Exhibits A and B and counts upon a breach of the conditions in Exhibit A. Counsel for the plaintiffs in his opening statement to the court and jury referred to these exhibits and said "on the 21st day of September following the making of this contract, Mr. Hickle made and executed on his part a written contract which complied with the terms and provisions of the agency which was created in Sharrar and Watson" * * * and claimed that by so doing they had complied with the conditions contained in the listing contract, and were entitled to their commission.

The two witnesses who testified to plaintiffs' having found a purchaser of the farm were Mr. Sharrar and Mr. Hickle. Mr. Sharrar testified in part as follows:

"*Q.* Now, witness, calling your attention to Exhibit B, I will ask you if you at any time submitted to Mr. Nestle any other terms than what are contained in this, for the purchase of the farm?

"*A.* That is the 3,300 and 500 down, it is the only one.

"*Q.* That is the only one?

"*A.* Yes, sir.

"*Q.* And it is the proposition which Mr. Hickle, you say, made?

"*A.* Yes, sir.

"*Q.* For the purchase of the land?

"*A.* Yes, give him 3,000 down and add our 800 commission.

"*Q.* You put it all in there?

"*A.* I suppose it is in there; yes, sir.

"*Q.* And that is the only proposition that you ever communicated to Mr. Nestle for the purchase of that farm?

"*A.* Only one I know of.

"*Q.* If there had been any other you would have known it?

"*A.* I think I would."

Mr. Hickle was a witness, his cross-examination was in part as follows:

"It was a short time before we went out there, week or two, with Exhibit B in our possession that I first talked to Mr. Sharrar about it. I wouldn't say it was one week or two weeks, just a few days, something like that. I signed Exhibit B a short time, I think a week, before we took it out to the farm. I haven't any judgment about the time, I can't tell whether it was a week, a day, or what it is.

"Q. Did you ever make any other proposition to Mr. Nestle than what is contained in this?

"A. No, sir.

"Q. And you never made any other offer for the farm than what is contained in this?

"A. No, sir.

"Q. That is Exhibit B?"

We think it clear that the case was tried upon the theory that the only offer to purchase was contained in Exhibit B.

It now becomes necessary to see what are the essential provisions of Exhibits A and B. We quote from Exhibit A:

"This agency is conditioned upon said agents obtaining for said lands, net to the owner, the sum of fourteen thousand (14,000) dollars of which $3,000 shall be paid in cash and the balance of purchase price all to be paid in 10 years, with the privilege of paying any amount any interest day with interest at the rate of 6 per cent. per annum from date of delivery of possession of said lands.

"Said agents agree to exert their best efforts to obtain a purchaser of said lands upon the above terms. In payment for which services, the owner agrees to pay said agents for their work in cash the excess of the purchase price of such lands over and above said $14,000 at the time the papers are signed and the sale completed with the purchaser. * * *

"In case such agents find or obtain no purchaser they shall receive nothing for any services per-

formed by them.    This agency is exclusive and not revocable.    *    *    *

"All lumber and barn frame to be reserved.    Some of rose bush and peonies to be reserved."

We now quote from Exhibit B:

"Said first party in consideration of the sum of fourteen thousand eight hundred (14,800) dollars, to be paid by second party to first party, and of the covenants to be performed by second party, as hereinafter expressed, hereby agrees to sell to second party all of that certain piece or parcel of land.    *    *    *

"Said second party, in consideration of the covenants herein made by first party, agrees to purchase of first party, the above described premises, and to pay therefor to first party, or his legal representatives, at St. Louis, Mich., the sum of fourteen thousand eight hundred (14,800) dollars, in manner as follows, viz.:

"$500 on signing of contract, receipt of which is hereby acknowledged; $3,300 or more on March 1st, 1921; $500 or more on March 1st, 1922; and $500 or more on March 1st, each and every year following, all to be paid in ten years from March 1st, 1921, together with interest on the whole sum that shall be from time to time unpaid, at the rate of 6 per cent. per annum, to be computed from March 1st, 1921, and to be paid annually.    Principal or interest not paid when due shall bear interest until paid at 6 per cent. per annum."

There is no statement in the contract that "All lumber and barn frame to be reserved; some of rose bush and peonies to be reserved."    The record shows that the lumber and barn frame were so attached to the realty that a deed of the farm would convey title to them.

It will be noted that in the listing contract the sum of $3,000 was to be paid in cash "with the privilege of paying any amount any interest day with interest at the rate of six per cent."    This insured to the seller that $11,000 of his money would draw six per

cent. for at least a year. The offer to purchase contract provided "$500 on signing of contract receipt of which is hereby acknowledged, $3,300 or more on March 1, 1921." It will be noticed that this gave the purchaser the right to pay in full for the farm March 1, 1921.

The right of defendant to have his $11,000 invested for at least a year at six per cent. interest was a valuable right. See *Barbour* v. *Hickey*, 24 L. R. A. 763 (2 App. D. C. 207).

We have already said enough in relation to the failure to make the reservations mentioned in the listing contract. It was no part of the duty of defendant to show the plaintiffs wherein they had failed to comply with the listing contract, but it was the duty of the plaintiffs to show they had complied with the conditions before they were entitled to their commission. *Hannan* v. *Fisher*, 82 Mich. 208; *Gannon* v. *Stansfield*, 216 Mich. 440, and the cases cited therein.

The other assignments of error have been considered but do not call for discussion.

The judgment is affirmed, with costs to the appellees.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.