KOSTER *v.* SIMON.

1. BROKERS—CONSUMMATION OF SALE—EVIDENCE.
    Action of prospective purchasers in signing written offer, with additional conditions, in effect a counteroffer, and acknowledgment of receipt of seller's acceptance of such counteroffer in which acceptance the terms were somewhat altered, did not have the effect of consummating the sale of the premises so as to entitle the real-estate broker to commission.

2. SAME—PLEADING—PRODUCTION OF READY, ABLE AND WILLING PURCHASER.
    A declaration in real-estate broker's action against vendors for commission, which failed to allege that the reason the deal was not closed, was not on account of the purchaser's default in that there was no allegation that the purchasers were ready and able to buy on their own terms or were ready, able and willing to buy on the vendors' terms was properly dismissed on motion by vendors since there was no allegation that plaintiff had produced a purchaser ready, able and willing to buy on terms agreeable to the vendor.

3. SAME—COMMISSIONS—QUANTUM MERUIT.
    A real-estate broker who failed to effect a sale of defendant vendors' property may not recover commissions on claim of *quantum meruit.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Brokers § 176.
[1] What deviation in prospective vendee's proposal from vendor's terms precludes broker from recovering commission for producing a ready, willing, and able vendee. 18 ALR2d 376.
[2] 8 Am Jur, Brokers § 174.
[3] 8 Am Jur, Brokers § 168.
[4] 8 Am Jur, Brokers § 179.

4. CONTRACTS—COUNTEROFFER—ACCEPTANCE.

> The acknowledgment by prospective purchasers of receiving the vendors' counteroffer does not constitute an acceptance of the counteroffer.

Appeal from Ionia; Davis (Morris K.), J. Submitted April 13, 1954. (Docket No. 61, Calendar No. 46,119.) Decided June 7, 1954.

Action by Clarence Koster against Clarence Simon and Elda Simon for real-estate dealer's commission. Dismissed on motion. Plaintiff appeals. Affirmed.

*Vander Veen, Freihofer & Cook,* for plaintiff.

*Eldred, Eldred & O'Connor,* for defendant.

REID, J. Plaintiff, a real-estate broker, brought suit to recover a commission on claimed sale price of real estate, and appeals from an order of the circuit court dismissing his suit because of deficiencies in the declaration.

Plaintiff filed a declaration, February 14, 1953. On motion to dismiss filed by defendants, the court concluded that the exhibit attached to the declaration and claimed by the plaintiff to be a contract for the sale of the lands, does not constitute a binding contract for the sale of the lands in question, and ordered the suit dismissed unless the plaintiff should file an amended declaration alleging that a sale was actually consummated.

An amended declaration was filed by plaintiff, July 25, 1953, in which plaintiff alleged that a sale of the lands was consummated, and reference was made to exhibits the same as the writings attached to the original declaration. On motion to dismiss, the amended declaration was, on October 16, 1953,

found defective as alleging conclusions rather than facts.

The first part of Michigan Court Rule No 17, § 1 (1945), is as follows:

"All pleadings must contain a plain and concise statement without repetition of the facts on which the pleader relies in stating his cause of action or defense, and no others."

Plaintiff thereafter filed his second amended declaration, the portions thereof necessary for present consideration being as follows:

"The plaintiff says:

"1. That he is an adult resident of the county of Kent and is presently and was at all times hereinafter mentioned, a duly licensed and authorized real-estate broker under the rules and laws of the State of Michigan, and that defendants are adults and residents of Ionia county, Michigan.

"2. That on or about May 14, 1952, plaintiff entered into an agreement with defendants, said agreement being a so-called listing agreement, a true copy of which is attached hereto, marked exhibit 'A' and made a part hereof.

"3. That after the execution of said agreement, plaintiff and his sales personnel, particularly one Alice Smith, commenced their efforts to sell defendants' farm as described in said listing agreement. That they advertised the property extensively in newspapers in Grand Rapids and in Ionia county and also showed the property to several parties in the summer of 1952, particularly one Claude R. Walton and wife from Freeport, Michigan, but were unable to sell the property to them.

"4. That in June 1952, plaintiff contacted one Lynn Rogers and wife from near Greenville, Michigan, and found that they were interested in the farm.

"5. That for a period of several months starting in June of 1952 plaintiff and particularly his sales

lady, said Alice Smith, negotiated with defendants and with said Lynn Rogers and wife in an attempt to negotiate and consummate a sale of the premises in question.

"6. That on or about November 14, 1952, said Lynn Rogers and wife made a written offer to purchase the property in question for the sum of $66,-000.

"7. That on or about November 15, 1952, defendants made a counteroffer to said Lynn Rogers and wife in writing, for the sale of the property.

"8. That on the same day, to-wit, November 15, 1952, said Lynn Rogers and wife placed their signatures upon the same instrument on which was written their original offer and the counteroffer of defendants, and thereby accepted said counteroffer. That said written instrument is attached hereto, marked exhibit 'B' and made a part hereof, by reference, said instrument having been already made a part of the original declaration in this cause.

"9. That immediately after said Lynn Rogers and wife placed their signatures on the foregoing instrument, said Alice Smith, the agent and employee of plaintiff, notified defendants that the Rogers had signed the agreement and accepted their counteroffer, whereupon defendant, Clarence Simon, said 'That's just fine.'

"10. That on or about November 16, 1952, defendants, relying on the accepted counteroffer for the sale of their property, went to the Federal Land Bank in Ionia county to make arrangements for the financing specified in said written instrument.

"11. Further, that on or about November 17, 1952, said Alice Smith gave the defendants their copy of the said written instrument signed as above set forth and received from the defendants a receipt for such instrument. Said receipt reading as follows:

"'November 17, 1952, received purchased (sic?) agreement of the Clarence Simon farm from Mrs. Smith.

'(Signed) CLARENCE SIMON,
ELDA SIMON.'

"12. That when said receipt was given to said Alice Smith, defendants told her that they had made application for the loan and that everything was going all right.

"13. That on or about December 6, 1952, plaintiff received a letter written by A. Ney Eldred, attorney, on behalf of defendants, stating that all negotiations toward reaching agreement with said Lynn Rogers and wife were terminated and all offers of defendants were withdrawn.

"14. Plaintiff fulfilled as above specified his obligations under said original listing agreement, exhibit 'A,' and the sale agreement, exhibit 'B,' and therefore, became entitled to receive his commission therein specified to-wit, 10% of the $66,000 gross sale price or $6,600."

Attached to the second amended declaration is a copy of sales agency contract signed by plaintiff and defendants for the sale of defendants' farm of 320 acres together with certain personal property for $66,000 within a term of 6 months from the date, May 14, 1952. Also attached to the second amended declaration are the writings grouped together as exhibit B attached to the original declaration including an offer to purchase signed by Lynn M. Rogers and Esther Rogers. Also attached is the owners' "counteroffer," which is as follows:

"Owner's Acceptance

A.M.
"Grand Rapids, Michigan.......19..P.M.
"The above offer is hereby accepted except Mr. Simons will not paint buildings. He will leave all

milk equipment except rack. Mr. Simons will build rack if Mr. Rogers furnishes pipe.

"We     over

"I also agree to pay Clarence Koster, Realtor, a commission of 10% for negotiating this sale, but if not closed on account of purchaser's default, the commission shall not exceed the amount of the deposit.

"We

"I hereby acknowledge receipt of a copy of this contract.

> "Signed:
> "CLARENCE SIMON
> "Owner
> "ELDA SIMON
> "Owner
> "Address.......... Phone...... ...

"Witnesses:
"ALICE C. SMITH
"Salesman"

Immediately following the so-called owner's acceptance is the following:

"Purchaser's receipt of accepted offer

"The purchaser hereby acknowledges receipt of the seller's signed acceptance of the foregoing offer to purchase.

> "LYNN M. ROGERS        L.S.
> "ESTHER ROGERS.        L.S.

"Dated Nov. 15, 1952"

It is to be noted that in the offer to purchase signed by Rogers and wife, among the items listed on the back of the offer, are "water heater and all milkhouse equipment. Mr. Simons to paint barn and all buildings."

In the "owner's acceptance" there were written in the words, "except Mr. Simons will not paint buildings. He will leave all milk equipment except rack. Mr. Simons will build rack if Mr. Rogers furnishes,

pipe." As to these written-in terms, called in the briefs, "defendants' counteroffer," the parties are in dispute. Plaintiff claims that the "defendants' counteroffer" was accepted by Rogers and wife. Defendants claim there was never any acceptance of the counteroffer, only an acknowledgment of the receipt of the paper showing the counteroffer.

After the filing of the second amended declaration, defendants renewed their motion to dismiss. Plaintiff's appeal is taken from the order granting this renewed motion.

In his findings, the trial judge held:

"Quite obviously exhibit 'B' is not a complete and binding contract between defendants and the Rogers' for the sale of land. To receive parol evidence that what appeared under the heading 'Purchaser's receipt of accepted offer' was intended as an acceptance of the counteroffer would be to vary the terms of the writing. I therefore, conclude that exhibit 'B' does not constitute a binding contract for the sale of the land in question between the defendants and Lynn M. Rogers and Esther Rogers."

It is plaintiff's theory that by signing the so-called "Purchaser's receipt of accepted offer," Rogers and wife intended their signatures thereto to be considered as a written acceptance of Simons' counteroffer. Plaintiff seems to rely upon his statements in paragraphs 9, 10, 11 and 12 of his second amended declaration, as statements of acts evidencing Rogers' intention of acceptance. The acts recited in those 4 paragraphs have no such evidentiary value.

To allege that Mrs. Smith told defendants that the contemplated buyers, Rogers, had accepted Simons' counteroffer, is of course not equal to alleging that Rogers and wife accepted Simons' counteroffer; merely that Mrs. Smith said so, not that it was so. That on hearing Mrs. Smith's statement, Simons

said "That's just fine" and proceeded to negotiate for a loan to carry out financial readjustments that the deal would require of him, does not amount to evidentiary indication of Rogers' acceptance of Simons' counteroffer. It is merely evidence that Simons believed what Mrs. Smith had said.

The statement in plaintiff's second amended declaration that Rogers and wife placed their signatures to the writing and "thereby accepted said counteroffer," is a conclusion contradicted by the very writing they signed and unsupported by any act or fact stated in the declaration.

Plaintiff's first amended declaration contained a statement that a sale was actually consummated between defendant and Rogers. That statement is omitted from the second amended declaration. It is conceded that no actual sale took place, *i.e.*, payment was not made nor was any deed made.

Plaintiff cites 17 Michigan decisions as sustaining his claim that a "real-estate agent is entitled to the recovery of his commission upon a showing that he has produced a purchaser ready, willing and able to purchase the property;" but not in the original declaration, nor in the first or second amended declaration is there any allegation that Rogers, the contemplated purchasers, were ready and able (as distinguished from "willing") to buy on the terms of their own offer to buy; nor that Rogers were ready, able and willing to buy on the terms of the counteroffer of defendants. The offer of Rogers to buy shows a willingness to buy on their own offered terms; but the allegation in the declaration that the Rogers signed an offer to buy, does not amount to an allegation that the Rogers were ready and able to buy even on the terms of their own offer. The declaration does not allege that the reason that the deal, the proposed purchase and sale, was not closed, was not on account of purchaser's default.

· *Quantum meruit* was claimed in count 2 of the original declaration but was omitted from the first and second amended declarations, and is not counted on in the brief of plaintiff. It is not claimed that without an agreement of purchase and sale, any commission was earned or recoverable.

The acknowledgment by the prospective purchasers, of receiving the counteroffer, does not constitute an acceptance of the counteroffer. There is a substantial difference between the buyers' offer and the owners' counteroffer, the difference being the painting of the buildings, and concerning the milk rack. The writings declared on, do not show an agreement. The acts declared upon by plaintiff are insufficient to show that Rogers affixed their signatures with the intent of accepting the counteroffer.

The trial court properly dismissed the case. The order appealed from is affirmed. Costs to defendants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.