JAMES C. CHERRY & FRANCIS D. CHERRY v.
JAMES MONTGOMERY

5-4119                                              412 S. W. 2d 845

Opinion delivered March 27, 1967

*Dulaney & Dulaney, Gentry & Gentry,* and *Shaver & Shaver,* for appellant.

*Harold Sharp* and *James Robertson,* for appellee.

JOHN A. FOGLEMAN, Justice. The question to be determined on this appeal is whether there was error in failure of the trial court to direct a verdict for appellants. The only inquiry necessary on this question is whether there is evidence that appellee produced a purchaser ready and willing to purchase lands of appellants listed for sale with appellee Montgomery on terms specified by appellants. We find conflicting testimony on all other fact questions sufficient to justify submission of those questions to the jury. They were resolved by the jury verdict, there being no question about the propriety of the instructions given. The only complaint about jury instructions is appellants' contention that the court should have given a binding instruction which was refused, and on which we find it unnecessary to pass. Appellee contends that Jonesboro Investment Corporation was ready and willing to buy the lands of appellants listed for sale with appellee, a real estate broker, upon the terms of the listing.[1] In stating facts, we will remember that the jury made certain factual determinations contrary to evidence offered by appellants which was contradicted and that, in considering the question to be resolved, the evidence and all proper inferences therefrom are to be viewed in the light most favorable to appellee.

The exclusive listing contract under which appellee seeks recovery of a real estate commission gave him an exclusive agency for one month from the date thereof—December 11, 1963—at a price of $900,000.00 "to be paid according to price and terms herein given". The terms were not stated anywhere in this agreement. Appellee

[1] A suit by Jonesboro Investment Corporation for specific performance was dismissed upon demurrer invoking the Statute of Frauds because the listing contract did not show the terms and conditions of sale. *Jonesboro Investment Corporation* v. *Cherry,* 239 Ark. 1035, 396 S. W. 2d 284. This action arose from a cross complaint by appellee against appellants in that suit both having been parties defendants therein.

contends that he performed his undertaking by obtaining Jonesboro Investment Corporation as a purchaser for $900,000.00 cash. Appellants contend that even if this prospective purchaser was ready and willing to purchase at that price, its "offer" or "acceptance", whichever it is called, was conditional in that it was made upon the express condition that the lands have a cotton allotment of 700 acres and a rice allotment of 100 acres. They further contend that this proposal was not pursuant to the terms of the listing in that it did not except from the proposed purchase a certain mantel piece built into the fireplace in the dining room of the Cherry dwelling house on the land. It is undisputed that one of the specific terms upon which the listing was given was that this mantel was to be kept by appellants, regardless of any other terms. Mrs. Cherry said that this mantel had been owned by her family for over 100 years and, in addition to its sentimental value, had a monetary value of several thousand dollars.

The evidence on this point shows that the prospective purchaser was informed by appellee that the mantel was to be excluded in the very earliest negotiations with it. The officers of Jonesboro Investment Corporation, as agents for X corporation (not then formed), made an offer of $830,000.00 for the land, to be paid over twenty-five years, in which they made no mention of any condition with reference to acreage allotments but clearly specified that the marble mantel would be reserved to appellants who would have been given six months after closing to remove it. The offer, of course, was not at the price specified in the listing. The offer upon which appellee relies was contained in a letter from Jonesboro Investment Corporation dated December 19, 1963 (after Mr. Cherry advised that the first offer was unacceptable) addressed to *James Montgomery* stating that the corporation *accepted* his offer[2] of the Cherry farm, that they enclosed a $25,000.00 check for earnest

[2]While appellants do not raise the issue, the right of a broker

money, and that "700 odd acres" of cotton allotment and "100 odd acres" of rice allotment were understood to be on the farm. No mention whatever is made of the mantel and the payment of the $900,000.00 purchase price was specified upon presentation of warranty deed and satisfactory title.

The appellee had, on the night of December 18th, arranged by telephone for an appointment with Mr. Cherry and appellants' attorney for December 21st. The earnest money cashier's check introduced was dated December 20th, having been delivered after December 21st to appellee in lieu of a company check. An endorsement on the check refers to a "December 19th contract of acceptance," the date having obviously been changed from December 18th—the date of the first offer. The officers of the prospective purchaser, appellee, Mr. Cherry and appellants' attorney all met on December 21st as arranged. All parties admit that the "acceptance" of December 19th was not mentioned at this conference by anyone, although there was discussion about terms of sale, and a later conference was agreed upon, and was later held on December 27th. No explanation was given for not mentioning this "acceptance" at the meeting of December 21st. Appellee had not advised appellants of the earnest money check on December 21st. On December 23rd the prospective purchaser asked appellee to put the check in the bank. The ticket for the deposit indicates the date of deposit to be December 22nd (a Sunday). The bank's endorsement of the check is dated December 24th. Jonesboro Investment Corporation first advised appellants that they had bought the land by this "acceptance" sometime between the two conferences. Appellee advised Mr. Cherry of the earnest money check sometime before the latter conference. At

---

to a commission upon an offer of a purchaser to enter into a contract upon a vendor's terms, made to the broker, and not the vendor, has been questioned. *Mattingly* v. *Pennie*, 105 Cal. 514 (1895); *Hicks* v. *Christeson*, 174 Cal. 712, 164 P. 395; *Frank Meline Co.* v. *Kleinberger*, 246 P. 136 (Cal. 1926).

the meeting of December 27th the officers of Jonesboro Investment Corporation advised Cherry that they had bought the farm for $900,000.00.

We find no evidence making a question of fact as to whether the prospective purchaser was willing to purchase the land and exclude the mantel, or from which an inference that they were may be justified. Appellee relies on testimony by Parker of Jonesboro Investment Corporation that it didn't make any difference to him whether they got the mantel or not. The testimony of appellee on which reliance is placed on this point is as follows:

"Q. Show you a copy of a letter of the 19th you were talking about, signed by Mr. Spurlock and Mr. Parker, anything in there about the marble mantel?

A. No, sir. Said they could have it.

Q. It isn't in there?

A. Would give it to them.

Q. You call this an acceptance?

A. Yes, sir. That was an acceptance.

Q. Wouldn't they be insisting they were entitled to everything in the house?

A. Might have forgot and left that out.

Q. Isn't in there?

A. Would have put it in there."

Spurlock testified that he and Parker were ready, willing and able to purchase the farm on the terms and conditions he and Parker "described". Our review of the

record reveals no testimony whatever that anyone ever informed the Cherrys that Parker and Spurlock were willing to accept a conveyance excluding the mantel. We think that the only inference which can reasonably be drawn from the December 19th letter is that Jonesboro Investment Company was unwilling to accept the Cherry property without the elaborate marble mantel, or without an assurance of crop allotment acreages, if they were to pay $900,000.00 cash rather than $830,000.00 by payments scattered over twenty-five years. A witness's affirmative answer to the question whether he was ready, willing and able to purchase realty is a mere conclusion, insufficient to make out a prima facie case for a broker in an action for a commission and is of no probative force in the light of undisputed contrary facts. *Apple-Cole Co., et al* v. *Shackel, et al,* 324 Ill. App. 230, 57 N. E. 2d 758 (1944).

This case is very similar to *Sharrar* v. *Nestle,* 193 N. W. 239, (Mich. 1923) wherein it was held that the trial court properly directed a verdict against a broker suing a landowner for a commission. The listing specified that all lumber and barn frame and some of the rose-bushes and peonies on the lands were to be reserved. The written offer submitted by the prospective purchaser contained no statement about the reserved property. The record showed that the lumber and barn frame were so attached to the realty that a deed of the farm would convey title to them. This was a basis for holding that the broker had failed to show compliance with his contract with the landowner. There can be no doubt from the evidence in this case that a deed to the farm of appellants would have conveyed the marble mantel if there were no clause in the deed to exclude it.

All parties concede that appellee would be entitled to recover only if the evidence shows that he produced a purchaser ready, willing and able to buy upon the terms and conditions specified in the agreement between the broker and the landowners. An offer to purchase

or "acceptance", as the case may be, which did not exclude the marble mantel was not on the terms and conditions of appellee's contract. Another condition of the prospective purchaser was that there be over 700 acres cotton allotment and over 100 acres rice allotment. Parker stated unequivocally that the acreages were a condition of his comp ny's acceptance. This was not a part of the terms specified by Mr. Cherry. The only evidence that the land actually carried those acreage allotments was the statement of appellee that Cherry told him that the 1964 allotments were 705 acres of cotton and 109 acres of rice. Appellee stated that he gave these figures to Parker and Scurlock. Appellee argues that this does not render the purchaser's offer conditional because there is no evidence that there is not more than 700 acres of cotton allotment and 100 acres of rice allotment. The burden of proof was on appellee to show that he produced a purchaser who was ready, willing and able to purchase on the terms and conditions specified by the owner. *Gladys Bell Oil Co.* v. *McGee,* 172 Ark. 1176, 291 S. W. 72. Consequently, the absence of proof would militate against appellee.

In *Weldon* v. *Lashley,* 214 Ga. 99, 103 S. E. 2d 385 (1958) it was held that proof of an offer by a purchaser containing a provision that the number of acres in the tract on which the sale price would be calculated be determined by a survey of the property provided and paid for by the purchaser showed a material variance from the broker's listing in which the sale price was $2,500.00 per acre, so that it was error to deny a directed verdict in the broker's suit for compensation.

A judgment in favor of a broker employed to secure a loan was held erroneous fo. failure to secure a lender ready, willing and able to make a loan on borrower's terms, when the offer was conditioned upon an examination of borrower's property. *Robertson* v. *Carvey,* 9 Alaska 488 (1939). It has also been held that a directed verdict was proper in a suit by a broker for a com-

mission for the sale of a garage when the purchaser was not willing to take the property as he found it, but agreed to buy providing the premises would show a specified net profit. *Stuart* v. *McEttrick*, 136 N. E. 395 (Mass. 1922).

The trial court erred in denying a directed verdict. The judgment of the lower court is reversed and the case having been fully developed, is dismissed.

BYRD, J, dissents.