## GARDNER *v.* BATSAKES.

### OPINION OF THE COURT.

1. MOTIONS—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING VERDICT.

   A motion for directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict (GCR 1963, 515.2).

2. BROKERS—LISTING AGREEMENT—DATE OF PERFORMANCE.

   The date of performance specified in a listing agreement is binding on the parties in the absence of any agreement between them changing that date.

3. SAME—LISTING AGREEMENT—TIME OF PERFORMANCE—EXPIRATION —WAIVER.

   Meeting arranged by sellers, after expiration of listing agreement with broker to sell a bar, to give plaintiff broker an opportunity to present a ready, willing and able buyer *held*, to allow jury to conclude that the sellers were willing either to extend or to waive the designated period for negotiations until a time when a meeting could be arranged.

4. SAME—LISTING AGREEMENT—TIME OF PERFORMANCE.

   Time of performance of a contract may be extended by parol, especially where time is not expressly made the essence of the contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 632.
[2] 12 Am Jur 2d, Brokers §§ 54, 159.
[3–5, 7] 12 Am Jur 2d, Brokers § 219.
[6, 8] 12 Am Jur 2d, Brokers § 182 *et seq.*

5. SAME—LISTING AGREEMENT—PERFORMANCE—VARIANCE—WAIVER.

Submission to jury of question whether plaintiff broker had procured a buyer in conformity with listing agreement for sale of defendant sellers' bar and thus earned his commission *held* proper, where the sellers had waived the expiration of the time limited in the listing agreement by arranging a meeting with the broker and buyer after the time had expired for further negotiations, two variances in terms proposed by buyer were withdrawn at the meeting, and the only remaining item in dispute was whether payments proposed by buyer conformed to those asked by seller in listing agreement.

DISSENTING OPINION.

SULLIVAN, J.

6. BROKERS—COMMISSION—COUNTEROFFER.

*Broker who had listing agreement with defendants with exclusive right to sell their bar, and presented an offer to purchase which contained provisions different from defendants' offer to sell, presented a counteroffer; therefore he did not produce a ready, willing and able buyer and was not entitled to his commission under the listing agreement.*

7. SAME—LISTING AGREEMENT—TIME OF PERFORMANCE—EXTENSION —WAIVER.

*Premise that testimony by defendant, in action on real estate listing agreement by broker, permitted jury to conclude that defendants were willing either to extend or waive time limit in listing agreement, is untenable where plaintiff made no such claim in the case and offered no proofs in support of it, and trial court did not instruct the jury that they could find extension or waiver as a fact.*

8. SAME—COURTS—JURY TRIAL—IMPERMISSIBLE BURDEN.

*Instruction to jury, in action by plaintiff broker against defendant sellers to recover commission for producing a ready, willing and able buyer, that for plaintiff to recover the jury must find that plaintiff had produced a buyer who was ready, willing and able to purchase the property in accordance with the terms of the offer to sell imposed an impermissible burden on the jury by delegating to the fact finders that which was a clear question of law under the record.*

Appeal from Washtenaw, Ager (William F., Jr.), J. Submitted May 1, 1967, at Lansing. (Docket No.

452.)   Decided  September  26,  1968.   Rehearing
denied November 14, 1968.   Leave to appeal granted
March 12, 1969.   381 Mich 807.

Complaint  by  Keith  L.  Gardner  against  James
Batsakes and Gus Vetogianis for money owing un-
der real estate listing agreement.   Verdict and judg-
ment for plaintiff.   Defendants appeal.   Affirmed.

*Kelly, Kelly & Kelly,* for plaintiff.

*Jack J. Garris,* for  defendants.

T. G. KAVANAGH, P. J.   This is an action by a
real estate broker for a commission in the amount
of $5,000 claimed to be owing under a real estate
listing agreement.   A jury returned a verdict for
plaintiff, and the court denied defendants' motion
for judgment notwithstanding the verdict and en-
tered judgment for plaintiff.   Defendant appeals.

Under  our  court  rules  a  motion  for  a  directed
verdict is a prerequisite to a motion for judgment
notwithstanding the verdict.   GCR 1963, 515.2.   See
also  2  Honigman  and  Hawkins,  Michigan  Court
Rules Annotated (2d ed), 1967 Pocket Parts, Au-
thors' Comments, p 71.   Since no motion for directed
verdict was made to the trial court, denial of de-
fendants' motion was not erroneous.

On December 11, 1963, plaintiff broker and de-
fendants entered into a listing agreement in the
form of an "Offer to Sell", in which plaintiff was
granted, for a one month period, the exclusive right
to sell defendants' bar in Ann Arbor.   The "Offer to
Sell" provided that if, during the one-month period,
plaintiff produced a purchaser ready, willing and
able to purchase the business under the terms set
forth therein, defendants would pay him a commis-

sion of 10% of the sale price. There were two "Offer to Sell" forms signed by the parties, one for plaintiff's reference and assistance in negotiating with prospective purchasers and the other retained by defendants.

On January 2, 1964, plaintiff procured an "Offer to Purchase" the bar. After two unsuccessful attempts to present this offer, the broker notified sellers, in a certified letter received by them on January 6, 1964, that he had a ready, willing and able purchaser.

At the invitation of defendants, a meeting was held on January 15, 1964, whereupon sellers, reading buyer's offer for the first time, pointed to certain variances between it and their offer to sell, namely:

1. Buyer's provision that sellers cooperate in obtaining a lease with a renewal option.

2. Buyer's provision that sellers not compete for 5 years within a 10-mile radius.

3. Buyer's offer to pay the purchase price in monthly installments of $400 each as contrasted with sellers' interpretation that their offer called for monthly payments of $400 each, meaning each partner.

The testimony is undisputed that the buyer, upon hearing these objections, agreed immediately to eliminate the first two provisions, but, after reviewing sellers' books, refused to purchase on terms of $800 monthly installments. No sale was consummated, therefore, solely because of failure to reach an agreement on the payments.

The jury, having been instructed by a summarization of the parties' respective positions, including the two interpretations regarding the payments, returned their verdict for plaintiff.

Defendant now claims on appeal that buyer's abandonment of his first two provisions came too late as the listing agreement had expired. We recognize the principle that the date of performance specified in a listing agreement is binding on the parties in the absence of any agreement between them changing that date. However, defendants, albeit in an attempt to show that they had dealt in good faith, testified that the January 15, 1964, meeting was arranged by them to afford plaintiff an opportunity to present a ready, willing and able buyer. Mr. Vetogianis stated that the purpose of the meeting was:

"To complete the deal."

Mr. Batsakes, when explaining one postponement of an earlier meeting stated:

"I told him [plaintiff] that I have to be away that afternoon [i.e. Friday, January 3, 1964]—if it was possible that I can meet him any day after a week." (Emphasis added.)

This testimony allowed the jury to conclude that defendants, purportedly dealing in good faith, were willing either to extend or to waive the designated period for negotiations until such time as a meeting could be arranged. The expiration date reflected in the listing agreement was not expressly of the essence of the contract. It could be orally waived or extended. "Time of performance of a contract may be extended by parol, and this is especially true where time is not expressly made the essence of the contract." Frazer v. Hovey (1917), 195 Mich 160, 168.*

---

* It was said in that case that:

"There is considerable conflict in the testimony. But an examination of the testimony of defendant shows that he did not treat time as of the essence of the contract, for he testified that after November

We recognize the principle that a broker does not perform in accordance with a listing agreement with the owner if the offer which he obtains from a proposed purchaser contains provisions other than those on which the owner has agreed to sell. However at the January 15, 1964, meeting, the only irreconcilable variance revolved around the differing interpretations of sellers' language regarding monthly payments, the other points of difference having been waived. Sufficient evidence was presented to support the jury's finding, which necessarily required construction of the language regarding the payments. We find no error in refusing to heed defendants' assertion that the expiration date was binding on plaintiff when, as defendants' own testimony at trial reflects, they scheduled in good faith a meeting at their earliest convenience for the purpose of completing the deal.

Affirmed. Plaintiff may tax costs.

LEVIN, J., concurred with T. G. KAVANAGH, P. J.

SULLIVAN, J., (*dissenting*).  I regret that I am unable to concur with my brethren in this case, for I am certain there is a large measure of poetic justice in their holding. But while, as Mr. Justice WIEST once remarked, there may be a modicum of the layman's concept of equity in the Court's holding, there are principles of law involved here which ought to be honored in a court of law.

There are certain statements of fact that I feel must be set out to fully understand the legal positions of the parties, and so, with an apology for

1st he was ready to go ahead with it, and that even down to the day this suit was started the plaintiff 'could have had that property if he had come up and paid his money, and carried out the contract.' and that he would have taken the money on December 27th, but said there was a misunderstanding as to the hour of the meeting." (p 167.)

some repetition, I would like to state what I consider the salient facts from the record.

On December 11, 1963, plaintiff broker and defendants (the sellers) entered into a listing agreement in the form of an "offer to sell" which provided plaintiff, for a one month period, the exclusive right to sell defendant's bar in Ann Arbor. The offer to sell, containing an express expiration date of January 11, 1964, reflected a purchase price of $50,000, down payment of $12,500 and "Time Balance $37,-500 at $400 or more each per month, including interest at 6 per cent per annum."

It further provided that:

"If, during the said period, the business is sold by you or me or anyone else, or if you produce a purchaser ready, willing and able to purchase the business under the terms herein set forth, or if it shall be sold within three (3) months after the expiration of this listing agreement to any person with whom you have had negotiations for the sale thereof, I (we) agree to pay you a commission of ten (10%) per cent of the sale price."

On January 2, 1964, plaintiff broker obtained from Theodore J. Dwyer a $3,500 deposit which accompanied an offer to purchase the business for $50,000, $12,500 down payment with a balance of $37,500 to be paid "in monthly installments of $400 or more each, including interest on the unpaid balance of 6% per annum." In addition the purchaser's offer contained these additional provisions not contained in the offer to sell, namely:

1. "Seller to cooperate in obtaining lease for 5 years—five-year option—$300 month rent."

2. "Sellers are not to enter into competitive business directly or indirectly for five (5) years in a ten (10) mile radius of Ann Arbor."

When this offer to purchase was completed, plaintiff broker phoned defendants immediately, arranging a meeting for the following day (January 3, 1964), but the meeting was cancelled on the morning of the 3rd by defendant Batsakes who left a message on plaintiff's telephone answering device. The content as well as the veracity of defendant's explanation for the cancellation as contained in that message were disputed, the actual recording having been destroyed. However, there is no question that plaintiff, then, accompanied by the prospective purchaser, on that same day made two visits to the bar in an attempt to meet with the sellers. Defendant Vetogianis refused to conduct any transaction in the absence of his partner Batsakes. At this point plaintiff evidently became convinced that defendants were trying to avoid the sale. Plaintiff consulted an attorney and, subsequently, on January 6, 1964, plaintiff notified defendants by certified mail that he had a purchaser "ready, willing and able to buy." The parties had no further contact until January 13, 1964, when plaintiff received a letter stating that the offer to sell called for monthly installment payments of $800, *i.e.,* $400 to each partner. At defendants' invitation, a meeting was scheduled for January 15, 1964, where, for the first time, defendants actually looked at the offer to purchase and rejected it as nonconforming. The testimony indicates that the prospective purchaser thereon agreed to waive those provisions in his offer to purchase requiring defendants to cooperate in obtaining a five-year option and prohibiting competition within a certain radius. At this time it appeared that the only obstacle remaining was the amount of monthly payments on the balance of the purchase price, *i.e.,* $400 or $800. The prospective purchaser, however, refused to pay $800 per month.

The sale was never consummated. Defendants refused to pay the broker his fee. Plaintiff sued and recovered and defendants brought this appeal.

In my view, there is only one question that needs to be answered and that is whether, under the record here presented, the plaintiff producd a ready, willing, and able buyer in accordance with the terms of the offer to sell—that is by January 11, 1964. Other issues might have been framed and pursued (*e.g.* estoppel, substantial compliance, waiver, etc.) but they were not. The plaintiff might have pursued different theories, but we must deal with the one he did pursue, *viz.* that on January 3, 1964, he had (by virtue of the offer to purchase adverted to above) produced a ready, willing and able buyer and, hence, was entitled to his commission.

If plaintiff had produced such a buyer, I would agree that the actions of defendants, *viz.* refusing to look at the proposal, failing to keep appointments, etc., would not bar plaintiff's recovery. Unfortunately for plaintiff, what he unsuccessfully sought to bring under the gaze of defendants was a counter-offer (*Koster* v. *Simon* [1954], 339 Mich 556; *Sharrar* v. *Nestle* [1923], 222 Mich 538), and all that happened thereafter, under the record here, is without legal significance to the disposition of this case.

At the expiration date of the listing agreement, plaintiff, as a matter of law, had not produced a purchaser ready, willing and able to buy the property. Had this position been urged on the trial court at the conclusion of plaintiff's proofs, defendants would have been entitled to a directed verdict, though I agree with my brothers that failure to make such a motion precluded judgment *non obstante veredicto* for defendants. GCR 1963, 515.2.

But my agreement ends there. The Court seems to base its affirmance on the premise that certain testimony by the defendant Batsakes (which is set

out above) "allowed the jury to conclude that de-
fendants   *   *   * were willing either to extend
or to waive the designated period [January 11] for
negotiations."     Certainly   the   defendants   could
have extended or waived the date of expiration,
and certainly in a proper case, whether there was
such a waiver or extension might become a ques-
tion of fact for a jury with appropriate instructions.

The trouble with trying to dispose of this case
on that premise is that plaintiff made no such claim
in this case, offered no proofs in support of such
a theory, and, what is even more important, one
can search the record in vain attempting to find
where the trial court gave instructions to the jury
suggesting they could find as a fact such alleged
waiver or extension.

Additionally, having said that the jury "could
have found" such waiver or extension, (thus justi-
fying the verdict) this Court appears to have found
such waiver itself in an unusual fact-finding venture
of an appellate court:

"However at the January 15, 1964, meeting, the
only irreconcilable variance revolved around the
differing interpretations of sellers' language regard-
ing monthly payments, *the other points of difference
having been waived.*" (Emphasis supplied.)

As I read the record it appears that at the Janu-
ary 15 meeting, defendants were claiming that
plaintiff had failed to produce a ready, willing and
able buyer by January 11. It is of some significance,
too, in appraising this Court's decision that plain-
tiff's theory of the case is that he is entitled to the
commission because on January 3 he *had* produced
a ready, willing and able buyer. Indeed, that is
exactly the burden of the trial court's instructions.

I think I am as loath to disturb a jury's verdict
as the rest of the Court, but when the trial court

instructed the jury that for the plaintiff to recover the jury must find that the plaintiff had produced a buyer (by virtue of the aforementioned offer to purchase) ready, willing and able to purchase the property "in accordance with the terms of the offer to sell," the court was imposing an impermissible burden on the jury and delegating to the fact finders what under this record was a clear question of law.

I would reverse and remand for new trial. No costs.