**Robert A. PERES**

**v.**

**UNITED STATES of America.**

**No. 79–2869.**

United States District Court,
S. D. Florida,
Miami Division.

April 22, 1980.

A. John Goshgarian, Miami, Fla., for plaintiff.

Paul D. Lazarus, Asst. U. S. Atty., Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

SPELLMAN, District Judge.

On June 28, 1978, Petitioner Peres was convicted of possession of cocaine, possession with intent to distribute cocaine, and possession of cocaine on board an aircraft arriving in the United States without having entered the substance on the flight manifest. Petitioner was sentenced to seven years in prison and seeks a Writ of Habeas Corpus based on ineffective assistance of counsel.

Petitioner was arrested at Miami International Airport by a Drug Enforcement

Administration agent (hereinafter DEA) on December 20, 1977 when a shipment of fire extinguishers from Peru, which Petitioner was picking up, was found to contain cocaine. Petitioner claims he had no knowledge of the contents of the fire extinguishers. He stated at trial that he took them to Peru for a trade fair from December 15–17, and had them shipped back to Miami empty.

Immediately after his arrest, Peres was questioned by a DEA agent. Peres claims to have been held incommunicado for five or six hours after his arrest, and alleges that he was questioned without counsel, after having repeatedly requested the presence of an attorney. Defense counsel was aware that Petitioner's *Miranda* rights may have been violated, and made remarks to this effect during his opening and closing statements to the jury. Petitioner's attorney made no pre-trial motions to suppress any testimony elicited from Peres while he was questioned by the DEA.

Petitioner claims that he attempted to contact his attorney, Mr. Benicasa, on five or six occasions to discuss the case, but was simply assured by Mr. Benicasa that the case would be dismissed. Petitioner further claims that examination of witnesses was not discussed. On the day of the trial, Mr. Benicasa entered a guilty plea without Petitioner's consent and, when Petitioner objected, the plea was withdrawn. Mr. Benicasa claimed that the plea was based on Petitioner's failure to assist him during trial preparation. The record reveals that prior to the attempted plea, no motion for a psychiatric evaluation was filed. Mr. Benicasa stated that it was "something that I just thought of last night, you know."

After his conviction, Petitioner filed a motion for a new trial based on ineffective assistance of counsel. At a hearing held pursuant to that motion, Mr. Benicasa testified that Petitioner had been "high on booze and Percodan" the first day of the trial. Defense counsel also testified that the entire week before the trial the Petitioner "was like he jumped off the deep end."

In addition to defense counsel's conduct before and during the trial, Petitioner has raised two other grounds for his contention that counsel was ineffective. On December 14, 1978, the Supreme Court of Florida granted R. Dale Benicasa's petition for leave to resign from the Florida Bar in lieu of disciplinary proceedings based on past clients' allegations of negligence. Finally, on September 27, 1978, United States District Judge James Lawrence King granted a motion for new trial in Case No. 77–235–CR–JLK based on Mr. Benicasa's ineffective assistance. The charges which faced the defendant in Judge King's case were similar to those faced by Petitioner, and the conduct of Mr. Benicasa—failure to file a motion to suppress, failure to enter into meaningful plea negotiations with the government, and lack of trial preparation—was strikingly similar to the instant case.

The standard for measuring the performance of trial counsel is reasonably effective assistance. *United States v. Johnson*, 575 F.2d 1347 (5th Cir. 1978); *United States v. Carter*, 566 F.2d 1265 (5th Cir. 1978). In determining whether an accused was denied his right to effective assistance of counsel, the court must inquire into the actual performance of counsel in conducting the defense and determine, on the totality of the circumstances and the entire record, whether reasonably effective assistance was rendered. *Carbo v. United States*, 581 F.2d 91 (5th Cir. 1978).

In a number of Fifth Circuit cases, the court considered whether counsel filed pertinent pre-trial motions, effectively cross examined witnesses, and diligently defended the accused. *United States v. Jones*, 580 F.2d 785 (5th Cir. 1978); *United States v. Johnson, supra; United States v. Carter, supra*. Mr. Benicasa's testimony at the hearing on a motion for a new trial indicates that he failed to conduct an adequate investigation into the circumstances surrounding Petitioner's arrest.

Q. [By Mr. Goshgarian, counsel for the defendant at the hearing] Now my question is this: When you questioned Mr. Peres, as you allegedly questioned

him in preparation for this trial, did you ask him about the so-called trade fair in Peru?

A. [By Mr. Benicasa] Yes, I did.

Q. Did you ascertain whether or not there was a trade fair?

A. Yes, I did.

Q. Was there?

A. Yes, there was.

Q. So you were satisfied that there was a trade fair there and the Mr. Peres took part in that or at least took some fire extinguishers there?

A. That is what I was told; that I knew there was a trade fair and I knew that is what he was supposed to go down there for.

Q. And where did you get this information from?

A. From Mr. Peres and from other people that know Mr. Peres.

Q. And you didn't do an independent investigation on your own?

A. Did I go to Peru? No.

Q. I don't mean that. Did you find out whether or not there were brochures involved or whether or not they had a directory printed?

A. No, sir.

Q. So that at the time when the Government brought in their "surprise witness" he was able to testify in truth and in fact that there was not a fair at that particular time; is that correct?

A. No he didn't testify to that.

Q. What did he testify to?

A. He testified that there was a fair, but he testified that the company Mr. Peres was supposed to be representing never paid to get into the fair and that he was the one that had the documents that proved they never signed up for the fair.

Q. Did you ascertain that before you went to trial?

A. No.

Q. Now getting back to the so-called preparation, Mr. Peres has stated here that you filed a motion to withdraw. He says in his affidavit that there was a motion to withdraw or a letter written to the Court or a motion for a continuance.

A. No. There was a motion to withdraw and for the appointment of a public defender.

Q. On what basis?

A. On the basis that I had not received any funds or any compensation from the defendant, so no discovery, or nothing could be done on my part.

I thought that if he was turned over to the public defender that they could use government funds.

Q. Did you put that in your motion?

A. I believe I did. Mr. Peres has a copy of that motion.

Q. Did you ever indicate to him that you needed money? What did you need the money for? What for, discovery?

A. I needed money to bring witnesses in. I needed money, like you're talking about, trying to get brochures and maybe if I had some monies I could have found that out. I needed monies to investigate more thoroughly.

\*　　\*　　\*　　\*　　\*　　\*

Q. Did you indicate to [Mr. Peres] that you did not feel you were prepared to go into this trial?

A. I indicated to him as my letter states, that I was not prepared to go into trial because I didn't have the funds available to conduct the trial properly.

Q. Did you yourself feel, sir, despite the fact that you did not have the funds, did you feel that you were not prepared to go into that trial?

A. No, sir.

Q. You felt that you were?

A. Yes, sir. I knew all the facts there was (sic) to know.

This testimony indicates that Mr. Benicasa was not prepared for trial. Consequently, defense counsel was unable to effectively cross examine the government's witnesses and to introduce evidence in support of his defense theory.

Mr. Benicasa's actions on the first day of the trial point out many reasons to question his competence as defense counsel. When the trial started, Mr. Benicasa announced

that Peres wanted to plead guilty to Count I of the indictment. The trial judge asked Peres whether his plea was being made on an informed basis and voluntarily. Peres responded:

There are certain circumstances—I really haven't had enough time with my counsel. Really, I have been sitting here not knowing what I am going to do. It is a rush—

This response is significant because Mr. Benicasa subsequently testified that Mr. Peres was "high on booze and Percodan" the day his guilty plea was negotiated. During the hearing on the motion for a new trial, Mr. Benicasa elaborated on the plea negotiations.

Q. [By Mr. Goshgarian] When you say that Mr. Peres wanted to enter a plea several times, had you discussed fully with him the consequences of the plea?

A. [By Mr. Benicasa] Yes, sir. We held the Court up like for about three hours. Mr. Lazarus [the Assistant U. S. Attorney], Mr. Peres and myself discussed it every-which-way.

Q. Do you feel that he understood what you were saying?

A. Oh, yes, sir.

Q. Wasn't that the morning that he was very confused and that was the morning that you tried to have him evaluated psychiatrically?

A. Yes.

Q. That same morning?

A. The same morning.

Q. And that is the morning that you discussed a plea with him?

A. That is the morning that I discussed the plea with him.

Q. And that morning you thought that he was disoriented, did you?

A. That is correct.

After Peres' response, quoted above, Mr. Benicasa suggested that the court order a psychological evaluation of Peres. The trial judge asked Mr. Benicasa why he waited until the day of the trial to move for a competency evaluation. Mr. Benicasa's response was as follows:

THE COURT: Of course we have been waiting for trial of this case from the time of the arraignment. And if you had any question about the defendant's competence, then I think you would want to bring it to the attention of the Court then.

MR. BENICASA: That is why I am bringing it forth today.

THE COURT: Why did you wait until today?

MR. BENICASA: I will tell you why: last Thursday was the calendar call. I asked for a continuance.

THE COURT: Now you asked it for discovery purposes and we do not have any discovery in the federal practice.

MR. BENICASA: Peres wasn't here. He was supposed to meet me here for the hearing. And last night Mr. Peres comes to my house the night before trial. And I never had a defendant like this do that to me.

THE COURT: Are you urging or are you telling this Court now that you believe that he may not be able to understand the nature of the charges or assist in his defense?

MR. BENICASA: Assist in his defense.

THE COURT: You should have told the Court that earlier.

MR. BENICASA: I didn't know that.

THE COURT: You talked with him how many times?

MR. BENICASA: Maybe six or seven times, Judge, and that is all. I'm telling you as I believe it today. I didn't know it last week or the week before last or I would have been in here. I don't even know if what I'm saying is true, Your Honor. That is just my belief.

The record reveals numerous inconsistencies in Mr. Benicasa's actions and testimony. At the calendar call, the week before trial, Mr. Benicasa asked for a continuance in order to perform *discovery*, although, as the trial judge pointed out, there is no discovery in federal criminal cases. The issue of Petitioner's mental competence was not brought up at the calendar call. The Petitioner's mental competence was not ques-

tioned until Mr. Benicasa attempted to enter the guilty plea and Peres expressed his confusion with that motion. At that point, Mr. Benicasa suggested that the guilty plea should be dropped and a plea of mental incompetence should be entered. The Petitioner, however, did not agree with the second motion either.

THE DEFENDANT: Why don't we skip the psychiatry. I need a little more time. I need at least a week and that is all.

THE COURT: What for?

THE DEFENDANT: To get my defenses together.

THE COURT: Well you have had since December 20th when you were arrested.

THE DEFENDANT: Well let me tell you what is going on. Number one, I didn't have the money to give to Mr. Benicasa. And I have had to go and scrounge around and get it from my mother.

THE COURT: You understand that we have a criminal justice system which permits you to have a court appointed counsel.

THE DEFENDANT: I understand that Mr. Benicasa has been sitting around waiting for legal fees. Now I have given him as much as I could. Now he hasn't had enough time to properly defend me. He hasn't had enough time.

THE COURT: When did you hire him as counsel? Was it prior to the arraignment?

MR. BENICASA: I got money last Tuesday, Judge, to take a deposition and to take some discovery.

THE COURT: We don't take depositions, you understand that.

MR. BENICASA: Well I have to have money to talk to people and to bring people up here and to subpoena them and bring witnesses in for this gentleman.

THE COURT: That is not a matter that the court must be concerned about, the matter of your payment of fees. If you were not paid, you had an opportunity to seek relief in the form of permission to withdraw. The Magistrate could have appointed counsel to be paid under the Criminal Justice Act.

Mr. Benicasa was apparently waiting for legal fees in order to prepare for trial and, according to the defendant, the continuance was requested because the fees were not paid until the week before the trial. The defendant's request for an extra week to prepare reflects his belief that Mr. Benicasa was not ready for trial.

█ The record manifests Mr. Benicasa's inability to effectively assist in the defense of his client. He was unable to explain to the trial judge why he asked for a continuance and why he waited until the trial date to request a psychological evaluation. He entered into plea negotiations while his client was "high on booze and Percodan" and at a time when he believed the defendant was mentally unfit to stand trial. Mr. Benicasa entered a guilty plea without the defendant's consent and when Peres objected, Mr. Benicasa suggested to the court that the defendant undergo psychiatric examination. Finally, Mr. Benicasa failed to have a public defender appointed in spite of his testimony that his funds were inadequate to prepare for trial.

This Court is also concerned with the reliability of Petitioner's testimony during the trial. Mr. Benicasa testified that the night he prepared Mr. Peres for cross examination "he was high on booze and Percodan and he had to be physically brought to my house by a friend of mine." This Court cannot determine whether Petitioner was unable to assist in his own defense or whether Mr. Benicasa was incapable of presenting an effective defense based on Peres' story. Although the trial judge decided that Petitioner was able to assist in his own defense, his conclusion was based on a short period of questioning. Mr. Benicasa's opinion that Petitioner was unable to assist in his defense was based on numerous conversations with Peres. If Mr. Benicasa had moved for a psychological evaluation prior to the trial date, the issue of Petitioner's competence would not now be before this Court. Based on the totality of the circumstances, Mr. Benicasa's ineffective

assistance and the question of Petitioner's mental competence, the petition is hereby GRANTED.

It is, therefore,

ORDERED and ADJUDGED that the Petition for a Writ of Habeas Corpus for ROBERT A. PERES is hereby GRANTED. The Petitioner shall be released from custody if, within 90 days, the government does not proceed with a new trial.