**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**George R. JONES, Defendant-Appellant.**

**No. 78–5022**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

George Reynold Jones, pro se.

Franklyn Louderback, St. Petersburg, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Marvin L. Rudnick, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant George R. Jones was convicted after a jury trial of the manufacture and possession, with intent to defraud, of counterfeit Federal Reserve Notes in violation of 18 U.S.C. §§ 471 and 472 and sentenced to serve concurrent terms of five years under each section. He appeals his conviction asserting numerous errors in the trial below.

During April 1977 Jones picked up two hitchhikers, Dale Quarles and Kathleen McNabb. On taking them to their home he raised the subject of counterfeiting and offered Quarles the opportunity to pass some counterfeit bills to be produced by the middle of 1977. About ten days later Quarles visited the Secret Service to inform them of Jones' offer. He did this, at least partly, in the hope of securing help with a pending marijuana prosecution against him.

From April to August Jones purchased a variety of printing supplies and equipment, including a succession of three presses at least one of which was capable of printing counterfeit notes. Appellant purchased this latter press on July 8. When it was repossessed several weeks later due to failure of payment, examination by the vendor and Secret Service agents revealed black and green ink in certain parts of the press.

On July 25, appellant met Frank Burt who moved into appellant's apartment the following day and lived there for over a week. Burt had a key to the apartment and kept some clothes there; he was free to come and go as he pleased. Appellant Jones asserts in his brief that he told Burt to leave after two nights but this contention is without support in the record. While there Burt discovered two sheets with three incomplete ten-dollar bills on each sheet; on returning home the evening

of August 2 he found a printing press in the dining room. Burt then called the Tampa police whom he allowed to enter the apartment and to whom he showed the sheets and the press. Jones was arrested later that evening on his return from work.

The following day Secret Service agents procured a search warrant and seized from appellant's apartment some Southworth paper, a stack of paper cut to dollar size, a finished, counterfeit ten-dollar bill, some ashes of notes from a hibachi grill, and some cans of ink.

█ Appellant Jones raises six issues on appeal. After careful consideration we find his contentions to be without merit. Jones first argues that the failure of the Tampa police to secure a warrant prior to their entry of his apartment and their seizure of the press and the sheets on August 2 required the exclusion of this evidence at trial. At a pretrial suppression hearing the trial court found that the police officers had entered the apartment pursuant to the lawful invitation and consent of Frank Burt who enjoyed equal rights to the common areas of the apartment. *See, e. g., Moffett v. Wainwright,* 5 Cir., 1975, 512 F.2d 496; *United States v. Hughes,* 5 Cir., 441 F.2d 12, *cert. denied,* 404 U.S. 849, 92 S.Ct. 156, 30 L.Ed.2d 88 (1971). The trial court's decision that Burt could lawfully consent to a search finds ample support in the record.

█ Second, appellant contends that he was denied his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process of law by the trial court's refusal to subpoena his mother at government expense under Rule 17(b), Fed.R.Crim.P. Jones asserts that his mother would have testified as to his character, prospective employment, location and financial condition between July 14 and August 2 and that she could have accounted for his activities during six of the days between July 7 and July 18. He argues that this eleven-day period was the only time he had the equipment necessary to print counterfeit bills and that his mother's testimony was, therefore, relevant to the defense that he had insufficient time to perform the acts

charged. The trial court granted the subpoena but denied the motion for expenses since the court found that appellant had not sufficiently demonstrated that his mother's presence was necessary to an adequate defense. "The decision to grant or deny a Rule 17(b) motion is vested in the sound discretion of the trial court." *United States v. Hegwood,* 5 Cir., 1977, 562 F.2d 946, 952, *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978); *United States v. Moudy,* 5 Cir., 1972, 462 F.2d 694, 697–98. We find no abuse of discretion in the district court's denial of appellant's motion.

█ Third, Jones contends that the evidence is insufficient to support a verdict of guilty. The standard for review is that "the verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Vomero,* 5 Cir., 1978, 567 F.2d 1315, 1316. In the instant case there is a wealth of evidence to support the verdict. Appellant's statements to Quarles establish the requisite intent to defraud. Sheets of incomplete ten-dollar bills and one finished, counterfeit ten-dollar bill were found in Jones' apartment. Appellant was in possession of at least one press capable of printing counterfeit notes and subsequent examination of this press revealed the presence of black and green ink. Finally, appellant admitted making the complete, counterfeit ten-dollar bill but claimed to have made it in 1974 prior to a previous arrest and conviction for counterfeiting. Later testimony established, however, that the paper on which this note was printed had not been manufactured until 1976.

█ Fourth, Jones asserts that the trial court erred in permitting him to conduct his defense pro se absent a knowing and intelligent waiver of his right to assistance of counsel. After the denial of a motion for acquittal at the conclusion of the prosecution's case in chief, appellant decided to proceed pro se for the remainder of the trial. He felt that his knowledge of print-

ing and of the facts of the case would enable him to present a more effective defense representing himself. Of course, a defendant in a criminal case may elect knowingly and intelligently to relinquish his Sixth Amendment right to assistance of counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Chapman v. United States*, 5 Cir., 1977, 553 F.2d 886. We find nothing in the record to indicate that appellant's decision to conduct his defense pro se was other than knowing, intelligent and voluntary. Before granting appellant's request the trial court conducted a lengthy colloquy with him, recommending that he continue his representation by counsel. The court found for the record that Jones was in possession of his faculties, literate and reasonably articulate. Further, at the court's request, counsel remained at the defense table for the balance of the trial to advise Jones.

■ Fifth, appellant contends that before his election to conduct his defense pro se he had received ineffective assistance of counsel. He argues that his appointed counsel failed to research printing techniques sufficiently to ask informed questions and failed adequately to research the law of third party consents under the Fourth Amendment. The standard for effective assistance of counsel is "reasonably effective assistance." *United States v. Carter*, 5 Cir., 1978, 566 F.2d 1265, 1273. Jones' counsel met this standard. He filed several motions including motions to suppress evidence and for acquittal. He examined witnesses and defended the case diligently. Indeed, when appellant decided to conduct his defense pro se he said of counsel: "It's not Mr. Ficarrotta's fault. I think he has done a very fine job up to this point." (Tr. p. B-103)

■ Finally, appellant asserts that evidence favorable to and requested by him remained undisclosed by the prosecution until it was elicited from witnesses at trial. He lists the allegedly exculpatory evidence in his brief as follows: "a scientific report of fingerprint analysis of the three 'counterfeit' exhibits; scientific analysis report of the press blanket; evidence that the Chief 15 press was unused and unusable; evidence that the A. B. Dick press was never used; a report that no contraband was found in Appellant's car; a report from Special Agent McFahl (sic) that as late as August 1, 1977, he could find no evidence of counterfeit activities on the part of the Appellant." (Brief at 24-25)

Aside from the report dealing with appellant's car, the substance of these reports and all of this evidence were adduced through testimony at trial. Agent Williams testified that fingerprint analysis had disclosed no prints on either the two sheets of counterfeit bills or the one complete ten-dollar bill. (Tr. pp. 53-54) He testified that an analysis of the press blanket from the press deemed most capable of printing counterfeit bills had revealed no residual impressions of counterfeit bills. The jury was informed that both of these analyses were conducted in Washington and were the subject of written reports.

Agent Williams further testified that he understood that the Chief 15 press had not been operational and that the A. B. Dick press had not recently been used. (Tr. pp. B-46 and B-53) This testimony was corroborated by a dealer in printing equipment who bought the Chief 15 from appellant and testified that it was not operational. (Tr. pp. A-148 and A-161-162) The A. B. Dick dealer who sold Jones the A. B. Dick press testified that this press probably could not print counterfeit bills. (Tr. pp. B-123-124) The prosecution did not contend, however, that appellant printed the counterfeit bills on either of these presses but rather on a third press, a "Multilith 1250," that was both operational and capable of printing counterfeit bills.

Finally, Agent McFaul testified that as of August 1, 1977, he "had no evidence to positively identify that you had produced counterfeit money." (Tr. p. B-155) However, McFaul further testified that while working undercover he had contacted appellant and offered to purchase a sample of a counterfeit note for one hundred dollars, and that appellant had responded that he did not have any counterfeit money.

Given that the source and substance of this information were adduced at trial and thus available for the jury's consideration, we find that appellant has failed to demonstrate that he suffered any prejudice from the prosecution's failure to disclose this information before trial. If there was error it was harmless.

Finally, with regard to the report that no contraband was found in his car, appellant has not shown the materiality of this information. The failure to disclose information violates due process only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976); *United States v. Anderson*, 5 Cir., 1978, 574 F.2d 1347, 1354. In light of the entire record this evidence would not create a reasonable doubt.

Appellant's conviction is therefore AFFIRMED.