David R. WILSON, Plaintiff-Appellant,

v.

The HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY et al., Defendants-Appellees.

No. 79–1102.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1979.

Decided April 28, 1980.

James Bopp, Jr., Indianapolis, Ind., for plaintiff-appellant.

Thomas G. Stayton, Baker & Daniels, Indianapolis, Ind., for defendants-appellees.

Before PELL and TONE, Circuit Judges, and VAN DUSEN, Senior Judge.[*]

PELL, Circuit Judge.

This action was brought by appellant under 42 U.S.C. § 1983,[1] the complaint alleging that the appellees' warrantless and consentless searches of appellant's properties violated the Fourth Amendment via the Fourteenth Amendment and that the procedures utilized by appellees to notify appellant of certain alleged health ordinance violations deprived appellant of his property without due process of law. Appellant sought damages for these violations, an injunction against future similar searches and deprivations and a declaratory judgment that the ordinance[2] pursuant to which appellees allegedly acted was unconstitutional.

---

[*] Judge Francis L. Van Dusen, Senior Circuit Judge for the Third Circuit Court of Appeals, is sitting by designation.

1. Section 1983 provides in relevant part: Every person who, under color of any statute, [or] ordinance . . . of any State or Territory, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Section 2 of the ordinance provides in relevant part:

The Health Officer is hereby authorized and directed to make inspections to determine the conditions of dwellings. . . . [T]he Health Officer is hereby authorized to enter, examine and survey, at proper times and upon presenting proper credentials of identification, all dwellings. . . . The owner or occupant of every dwelling . . . shall give the Health Officer access to such dwelling . . . at proper times for the purpose of such inspections. . . .

Section 3 provides, in relevant part:

.1 Whenever the Health Officer determines that there are reasonable grounds to believe that there has been a violation of any provision of this ordinance, . . . the Health Officer shall give notice of such alleged violation to the person or persons responsible. . . .

.2 Any person affected by such notice . . . may request and shall be granted a hearing on the matter . . . provided that such person shall file in the office of the Health Officer, within ten (10) days after service of the notice, a written petition requesting said hearing and setting forth a brief statement of the grounds thereof.

.3 . . . Any notice served pursuant to Sub-Section 3.1 of this ordinance shall automatically become an order if a written petition for a hearing is not filed in the Office of the Health Officer within ten (10) days after such notice is served.

The district court held that neither the searches nor the notices violated the constitution and therefore granted summary judgment in favor of the appellees. The uncontested facts as found by the district court are as follows.

### THE BROOKSIDE DUPLEX

Appellant is the owner of a duplex residence located at 2251–53 East Brookside in Indianapolis, Indiana. Because it is a duplex with separate entrances, each tenant is given the right to occupy only his or her side of the dwelling and the basement.

On March 20, 1976, a fire occurred at 2251 and one day later, the tenant of that side vacated the premises. The 2253 side, however, remained occupied. On March 26, 1976, while on a routine survey of the neighborhood, a health officer employed by the appellee Corporation was requested by the tenant of the 2253 side to inspect that dwelling. After inspecting the 2253 side, however, the officer also entered and inspected the interior of 2251. The later inspection was made without a warrant and without a notice to or the consent of appellant. The officer claimed in an affidavit, however, that the 2251 side was "open and completely unsecured." Six days after the inspection, on April 1, 1976, the appellee Corporation sent appellant a notice informing him of 31 health code violations allegedly found on the property and stating the appellant had thirty days to make the appropriate repairs before an order would issue. Such an order is enforceable in the state courts and failure to comply with an enforced order potentially subjects the individual to criminal penalties. The notice also stated that the "2251 side is not to be occupied or rented until repairs are made and inspected by us." Nothing was mentioned, however, regarding appellant's right under the ordinance to a hearing, but the notice did state, "If there are any questions relative to the contents of this notice, call the Division of Public Health. . . ."

Nothing further occurred until almost two months after the deadline had passed. On or about June 30, 1976, the inspector returned to the duplex for a follow-up inspection and allegedly discovered various health hazards still existing on the exterior of the duplex. No interior inspection was made at this time. As a result of this further inspection, a second notice was sent to the appellant requiring him to appear at a hearing to show cause why legal enforcement action should not be instituted against him for his failure to correct the alleged violations. Appellant did not appear at this hearing, and pursuant to the ordinance, enforcement proceedings were instituted on July 26, 1976, but were voluntarily dismissed on July 31, 1976, after appellant finally corrected the alleged violations.

### THE PENNSYLVANIA STREET APARTMENT BUILDING

Appellant also is the owner of an apartment building located at 2149–51 North

.5 Whenever the Health Officer finds that an emergency exists which requires immediate action to protect the public health, he may, without notice or hearing, issue an order reciting the existence of such an emergency and requiring that such action be taken as he deems necessary to meet the emergency.

Section 11 provides in relevant part:
.1 Any dwelling . . . which shall be found to have any of the following defects shall be condemned as unfit for human habitation and shall be so designated and placarded by the Health Officer.
[There follows a list of health violations.]
.2 Any dwelling . . . condemned as unfit for human habitation, and so designated and placarded by the Health Officer shall be vacated within sixty (60) days as ordered by the Health Officer.

.3 No dwelling . . . which has been condemned and placarded as unfit for human habitation shall again be used for human habitation until written approval is secured from and such placard is removed by the Health Officer.

Section 12 provides in relevant part:
Any person who shall violate any provision of this ordinance shall upon conviction be punished by a fine not less than Ten Dollars ($10.00) or more than Three Hundred Dollars ($300.00) to which may be added imprisonment for not more than ninety (90) days. Each violation shall be considered a separate offense, and each day's failure to comply with any such provision shall constitute a separate violation.

Pennsylvania Street in Indianapolis. Tenants in the building are not granted the right to occupy the basement of the building or apartments other than their own.

On June 7, 1976, in response to a complaint by a tenant, a health officer employed by the appellee Corporation visited the building to perform an inspection. When the officer arrived, a "young man" who identified himself as a resident of the building, but who has never been further identified or located, offered to show the officer around the premises. The young man first took the inspector to the basement area. The officer claimed in an affidavit that the door to the basement was standing open approximately equal to the width of the young man's shoulders and was sufficiently open to permit a "visual inspection of the basement" without moving the door farther. Nevertheless, the young man did open the door farther and the officer examined the basement, apparently by looking down from the top of the stairs and through the open door. After the viewing of the basement area, the young man took the officer to inspect various apartments. Some of the apartments were occupied and were inspected with the consent of the resident tenants, but at least one, apartment six, was unoccupied and was inspected without any consent or warrant. The officer stated in an affidavit that the door to this apartment was also open approximately to the width of the young man's shoulders and that the opening provided a "clear view" of the interior of the apartment. Nevertheless, the officer entered the apartment to make his inspection.

As a result of the June 7 inspection, a notice was sent to the appellant which contained a list of the violations allegedly found on the premises, an emergency order that some of these violations be corrected within ten days instead of the thirty days usually allowed, and a statement that all "corrections should be made on or before anyone is allowed to occupy the premises." The notice also stated, by quoting the ordinance:

> Any dwelling . . . which shall be found to have any of the following defects shall be condemned as unfit for human habitation and shall be so designated and placarded by the Health Officer.

[There followed a list of potential defects.]

> No dwelling . . . which has been condemned and placarded . . . shall again be used for human habitation until written approval is secured from and such placard is removed by the Health Officer.

This notice also did not contain any information regarding a hearing, but like the notice regarding the Brookside duplex, stated that any questions relative to the contents of the notice could be answered by calling the appellee Corporation.

After appellant was granted the right to sue the Corporation in addition to individual functionaries thereof, see *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), both parties moved for summary judgment which was granted in favor of the appellees. The district court found the warrantless inspection of the 2251 side of the Brookside duplex did not violate appellant's rights though it was made without consent because the dwelling was "open and completely unsecured," thus "open to public view," and therefore, not reasonably within appellant's "expectation of privacy." See *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (opinion of Justice Harlan). The court similarly held with regard to the Pennsylvania Street apartment building by finding that the health officer had a right to be in the hallways of the building with the consent of the occupants, and from that position merely saw and smelled what was obvious to the residents or other members of the public who ventured upon the premises. With regard to entry into unoccupied areas, the court stated: "by renting units and allowing other areas to remain open and unsecured, [appellant] diminished his expectation of privacy to a point where it was virtually non-existent."

The court also found for the appellees regarding appellant's due process objections to the notices. The court held that the provisions for a hearing within the ordinance itself was sufficient notice of the right to a hearing to meet due process standards and found, moreover, that even if there was a "technical violation" in the notices, appellant did not suffer any deprivation of property as a result. The court noted that no legal enforcement proceedings had been instituted regarding the Brookside duplex prior to the appellant's receipt of a second notice advising him of a hearing, and that no steps had been taken actually to condemn the Pennsylvania Street apartment house or otherwise deprive appellant of income from the property. Lastly, the court held that because appellant had suffered no constitutional violations himself, a ruling on the constitutionality of the ordinance was unnecessary.

Inasmuch as the court had disposed of the federal claims adversely to the appellant, the court also did not address the appellant's pendent state law claim that appellees acted beyond the powers and authority conferred upon them by the ordinance.

## I. THE WARRANTLESS SEARCHES

[1–3] It is well established by now, of course, that administrative searches such as the one here are subject to Fourth Amendment protection and generally must be conducted pursuant to a properly issued warrant. *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Warrantless searches are presumptively unreasonable,

*Katz, supra* 389 U.S. at 357, 88 S.Ct. at 514, *Laprease v. Raymours Furniture Co.*, 315 F.Supp. 716, 721 (N.D.N.Y.1970). It is normally the Government's burden, therefore, to show a warrantless search is otherwise "reasonable" within the Fourth Amendment. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951).

It is equally well established, however, that Fourth Amendment protections do not apply to areas or articles not within the individual's reasonable expectation of privacy. *Katz, supra* 389 U.S. at 361, 88 S.Ct. at 516 (opinion of Justice Harlan). As was stated in *United States v. Freie*, 545 F.2d 1217, 1223 (9th Cir. 1976), *cert. denied sub nom. Gangadean v. United States*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356, paraphrasing Justice Harlan's view of the *Katz* ruling: "ever since [*Katz*], the determination of whether an intrusion is an unreasonable search has depended on one's actual subjective expectation of privacy and whether that expectation is objectively reasonable." In the present case, the appellees seek to immunize their warrantless entries on the basis that it would be objectively unreasonable for the appellant to maintain any expectation of privacy in portions of multi-family properties which were "open and completely unsecured."[3] The district court agreed with this analysis, apparently, because it granted summary judgment to the appellees, never addressing the initial question of appellant's subjective expectations. Because we feel the district judge imposed overly stringent limitation on what subjective expectations of privacy might be found objectively reasonable, we reverse and remand for consideration of appellant's subjective expectations.

3. The appellees also seek to establish the reasonableness of these searches on the grounds that the tenants of the occupied portions of the premises had a "sufficient relationship" to the searched areas effectively to grant consent to the searches. *See United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Appellees have cited, and we have found, no authority for such a broad expansion of the consent doctrine, one which would allow neighbors the right to consent to the search of areas over which they exercised no control or had no possessory interest. No facts have been presented to support appellees' broad claim that appellant "assumed the risk" that tenants of other areas would enter or grant access to the unoccupied areas. We, therefore, as did the district court, refuse to enforce or create such an expanded theory here. *See generally Stoner v. United States*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), *and United States v. Heisman*, 503 F.2d 1284 (8th Cir. 1974) *and compare United States v. Jones*, 580 F.2d 785 (5th Cir. 1978).

By suggesting that it would be objectively unreasonable for an individual to maintain an expectation of privacy in unoccupied, open, and unsecured portions of multi-family dwellings, appellees are, in essence, requesting this court to write a new "open and unsecured" exception into the generally applicable warrant requirement. Appellees imply that such an exception would be a natural outgrowth of the previously established "plain view" and "open fields" exceptions. We disagree. '

Initially, we note that the privacy interests protected by the Fourth Amendment are to be jealously guarded. Thus, it has been stated that "one governing principle, justified by history and by current experience, has consistently been followed: except in *certain carefully defined classes of cases*, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant," *Camara, supra* 387 U.S. at 528–29, 87 S.Ct. at 1731 (emphasis added), and that "unless *some recognized exception* to the warrant requirement applies, *See v. City of Seattle*, [387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967)] would require a warrant to conduct the inspection. . . ." *Barlow's, supra* 436 U.S. at 313, 98 S.Ct. at 1820 (emphasis added).

In the present case, neither the "plain view" nor the "open fields" exception established in *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445; 68 L.Ed. 898 (1924), and more recently applied in *Air Pollution Variance Board of Colorado v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), would be directly applicable. The "plain view" exception is obviously unavailable to justify entry into the duplex because on the facts presently developed, nothing in the interior of the building has been shown to have been in plain view of the health officer while he was located where he had a right to be, on the outside. *United States v. Pond*, 382 F.Supp. 556, 562 (S.D.N.Y.1974), *aff'd*, 523 F.2d 210 (2d Cir. 1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649. It is also doubtful, however, whether this exception is of any assistance in justifying the entries into the basement and apartment on Pennsylvania Street. The most obvious problem is that it is not even clear in this case what, if any, violations were in plain view of the officer while he was located where he had a right to be. Even if we were to assume *arguendo, .*however, that some health violations were in view at that time, this fact alone would not seem to justify the warrantless entries into appellant's property without the concurrence of exigent circumstances. *Coolidge v. New Hampshire*, 403 U.S. 433, 464–68, 91 S.Ct. 2022, 2037–39, 29 L.Ed.2d 564 (1971), *United States v. Gardner*, 467 F.2d 205, 207 (7th Cir. 1972). Although such a view may help furnish the "probable cause" necessary to obtain a search warrant, it does not itself justify a warrantless search. *United States v. Holmes*, 521 F.2d 859, 869 (5th Cir. 1975), *aff'd in relevant part en banc*, 537 F.2d 227 (5th Cir. 1976); *United States v. Basurto*, 497 F.2d 781, 787–88 (9th Cir. 1974) and *Gardner, supra* at 207. Furthermore, a fundamental requirement of the exception is that the "view" must be inadvertent and unexpected. *Coolidge, supra* 403 U.S. at 469–73, 91 S.Ct. at 2040–42; *Blackie's House of Beef, Inc. v. Castillo*, 480 F.Supp. 1078, 1087–88 (D.D.C.1979). In this case, of course, the health officer entered the premises for the sole purpose of searching for health code violations. The alleged discovery of such violations can hardly be said to have been "inadvertent." *See Coolidge, supra* 403 U.S. at 473, 91 S.Ct. at 2042, and *Holmes, supra* at 869.

The "open fields" exception is subject to similar considerations and is, therefore, not directly applicable. Initially, it is unclear how the "open fields" exception can be used to justify the *entry* of appellees into a contained dwelling or area, albeit "unsecured" and having its door open. The open fields exception, in fact, does not even justify the warrantless search of open areas within the "curtilage" of a dwelling. *Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir. 1968), and *see United States v. Bensinger*, 489 F.2d 865, 867–68 (7th Cir. 1973), *cert. denied sub nom. Felton v. Saik-*

en, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214. The exception, as with the plain view exception, simply allows the warrantless "seizure" of evidence visible to the official or any member of the general public while they are located where they are lawfully allowed. It does not justify a warrantless entry in the first place. *Air Pollution Variance Board, supra,* is not inconsistent because in that case the inspector entered no part of the objector's plant to make his inspection. The Court noted: "The field inspector was on the respondent's property but we are not advised he was on premises from which the public was excluded," and from that vantage point the inspector "sighted what anyone in the city who was near the plant could see in the sky—plumes of smoke." 416 U.S. at 865, 94 S.Ct. at 2115. Even if the exception would justify an entry upon the sighting of a health violation, however, nothing in the interior of the duplex has been shown to have been visible to the health official while he was on the outside, and there is no finding of what, if any, violations were visible to the official through the open doorways in the apartment house. Moreover, even if the conditions in the apartment house were apparent to the inspector or tenants once they were inside the building, we do not believe this limited degree of visibility is to be equated to the visibility available to members of the general public required by the "open fields" rationale.

■ Nor does appellees' offered exception necessarily follow from the plain view or open fields exceptions. These exceptions are grounded upon the presumption that an individual who leaves articles in plain view or in open fields visible to any member of the general public can have no reasonable expectation of privacy in those articles. *Freie, supra* at 1223. Even if we were to assume *arguendo* that appellant's privacy expectations applicable to conditions within four walls, albeit with an open entrance, is only minimally greater than expectations of privacy warranted over conditions in open fields, the fact that no expectation is reasonable in the latter situation does not necessarily rule out a sufficient expectation in the former.

With regard to establishing what appears to be a new exception to the warrant requirement by finding appellant's potential expectations objectively unreasonable, the recent case of *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), is instructive, if not controlling. In *Tyler,* respondents had been convicted in state court of conspiring to burn their furniture store. Evidence incriminating them had been gathered during three warrantless entries and searches of the burned premises by police and fire officials without consent: 1) during and immediately after efforts to extinguish the fire; 2) four hours after the fire had been extinguished and after the inspectors had left and then returned to the premises; and 3) almost four weeks after the fire had occurred. The Michigan Supreme Court had suppressed the evidence discovered during the latter two searches, stating, "[once] the blaze [has been] extinguished and the firefighters have left the premises, a warrant is required to reenter and search the premises unless there is consent or the premises have been abandoned." *People v. Tyler,* 339 Mich. 564, 583, 250 N.W.2d 467, 477 (1977). As there was no consent for the searches and the facts failed to establish an abandonment, the state supreme court reversed the convictions.

The United States Supreme Court partially affirmed and partially reversed. The Court agreed that the first search was "reasonable" because the fire clearly presented the exigent circumstances necessary to justify a warrantless entry, and once in the building for this lawful purpose, the firefighters could seize evidence in "plain view." 436 U.S. at 509, 98 S.Ct. at 1950. The Court also agreed that the final search, occurring almost four weeks after the fire was clearly detached from the initial exigency and thus not justified or reasonable absent a warrant or consent. It was with respect to the second search that the Court disagreed and reversed. The Court held that because there would have been no constitutional infirmity had the fire officials remained and searched in the burned prem-

ises during the four hour period, and because the officials had departed solely because visibility had been severely hindered by darkness, steam, and smoke, the reentries four hours later were "no more than an actual continuance of the first [search], and the lack of a warrant thus does not invalidate the resulting seizure of evidence." *Id.* at 511, 98 S.Ct. at 1951.

■ On its face, the *Tyler* case would seem dispositive of the issues before us, at least with respect to the search of the Brookside fire-damage duplex. There was clearly no exigency such as a continuing fire justifying the entry of the health official, and as there was no consent, a warrant would seem required. Appellees, however, seek to distinguish *Tyler* on two theories.

First, appellees accurately point out that *Tyler* was concerned with the privacy expectations of the occupants of the burned premises, not of the non-resident owners. We think, however, that this is a distinction without a difference. Initially, it should be noted that the Court's concern with the occupants' expectations was due solely to the fact that the occupants and the owners in that case were the same individuals. Even if *Tyler* is not directly on point, however, we think its reasoning is applicable to our evaluation of the potential expectations of appellant. For example, as in *Tyler*, it is possible that appellant had personal effects remaining in the fire-damaged building. *See id.* at 505, 98 S.Ct. at 1947. Similarly, a warrant provides property owners and occupants alike with assurances as to the legality of the entry. *See id.* at 508, 98 S.Ct. at 1949. The Court itself analogized these two situations by stating "the warrant requirement provides significant protection to fire victims in this context, just as it does for property owners faced with routine building inspections." *Id.* In sum, we believe the appellant here is as much a "victim" of the fire as were the occupants in *Tyler*, and might well have retained expectations of privacy in the burned premises.

Appellees also stress the point that the premises in *Tyler* had been secured by the fire department between its inspections while the Brookside duplex and areas in the Pennsylvania Street building were admittedly open and unsecured. It does not appear, however, that the fact the premises in *Tyler* were secured by the fire department played any real part in the Court's decision and was mentioned only as one element to be taken into account by a magistrate in deciding whether to issue a warrant.[4] *Id.* at 507, 98 S.Ct. at 1949. Beyond this, moreover, it appears that appellees have entirely missed the central issue in their argument. The ultimate question to be decided in this and other similar cases is whether the individual entertains a reasonable expectation of privacy. In an effort to resolve this question we sometimes look to evidence and manifestations of the individual's expectations, such as his securing or nonsecuring of the premises searched. The fact that the *fire department* secured the premises in *Tyler*, therefore, is irrelevant to the question of the *occupant's* or *owner's* expectations, barring some evidence that the relevant parties relied upon the fire department's action and would have secured the premises themselves but for that action. The operative fact in *Tyler* so far as we are concerned here, is that there was, apparently, no evidence that the *occupants* had ever attempted to secure the premises or had relied upon the fire department's action. It was in spite of this fact, not because of it, that the Supreme Court held that the occupants might still entertain a reasonable expectation of privacy in the building.

■ We think the equivalent expectation would be reasonable in the present case, certainly insofar as the Brookside duplex is concerned. We also feel, however, that these same considerations are relevant to the review of the Pennsylvania Street apartment house search. The fact that the

---

4. In fact, the Court mentioned the element as a factor to be taken into consideration when deciding whether to issue a warrant to search for causes of a fire. The Court described this sort of warrant as deserving of "more particularized inquiry" than required for the issuance of warrants for routine building inspections. 436 U.S. at 507, 98 S.Ct. at 1949.

basement and apartment doors were open, thus leaving unspecified parts of the interiors open to view from the hallway, may present elements to be taken into account by the district court when determining appellant's subjective expectations, or by a magistrate when deciding whether to issue a search warrant. We do not believe, however, these facts necessitate the conclusion on summary judgment that an expectation of privacy by appellant would have been objectively unreasonable.

 In sum, we hold that an expectation of privacy by appellant could be reasonable notwithstanding the fact that the properties were "open and completely unsecured." The fact that members of the public could have discovered these alleged violations by affirmatively trespassing upon appellant's properties, of course, fails to legitimize an otherwise invalid search, see Holmes, supra at 869, and the fact that portions of the interiors may have been visible to tenants and their guests and invitees does not mean that appellant necessarily "threw open" the interiors of his premises to general public scrutiny. Though the objective limitations upon appellant's expectations may have been narrowed because these areas were visible to those individuals, nevertheless, broader expectations than those appropriate to objects in "open fields," visible to members of the general public, would seem warranted.

 Even if these areas were visible to the public, however, the inquiry is not necessarily ended. As was stated in Katz, supra 389 U.S. at 351, 88 S.Ct. at 511, and Wattenburg, supra at 857, the proper inquiry is whether the search occurred in an area the resident sought to preserve as private even if the area is accessible to the public. Similarly, in Bensinger, supra at 868, this court stated that Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and Katz, supra, "caution a court to be alert . . . to considerations which would make reasonable a con-

stitutionally protected entitlement to privacy regardless of the area involved." [5]

 The foundation of the district court's summary judgment was that the involved premises were so open and completely unsecured that they could not reasonably be within the owner's expectation of privacy. While candor compels us to recognize that the case may be a close one, nevertheless, we do not regard the meagre record here as justifying summary judgment. We are not aware of any requirement in law that the owner of property take affirmative steps to proclaim his expectation of privacy. One does not have to post signs prohibiting trespass, or keep his doors closed and locked (even though those procedures might be prudent in today's society), to maintain in full effectiveness an expectation of privacy. It is true that the plaintiff's affidavit relied solely on his ownership of the property to justify his alleged expectation of privacy, but that, it appears to us, without more, and in the absence of an affirmative showing that he had abandoned his expectation, should be sufficient to have made summary judgment inappropriate.

We do not regard Katz, supra, as standing for the proposition that ownership alone is an insufficient basis for a reasonable expectation of privacy. This was made clear in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) in which the Court stated in discussing the implications of Katz:

Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood

---

5. We think the statement, though made with regard to the traditional "curtilage test," is generally applicable.

have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest. These ideas were rejected both in *Jones, supra*, [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)] and *Katz, supra*. But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment.

439 U.S. at 144 n.12, 99 S.Ct. at 431 *and see* The Relationship Between Trespass and Fourth Amendment Protection after *Katz v. United States*, 38 Ohio L.J. 709 (1977).

Earlier cases interpreting *Katz* have also held that the analysis and comments in that case indicating that the Fourth Amendment is not dependent upon common law property concepts were meant to *expand* the right to privacy and legitimate expectations of privacy, not limit them, and that *Katz* did not render considerations of common law property rights irrelevant. *E. g., United States v. Carriger*, 541 F.2d 545, 549 (6th Cir. 1976); *United States v. Botelho*, 360 F.Supp. 620 (D.Hawaii, 1973) *and see United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir. 1976), *cert. denied*, 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109, and Amsterdam, Perspectives on the Fourth Amendment, 58 Minn.L.Rev. 349, 385 (1974). Furthermore, the fact the searched areas were unoccupied is relevant, though not dispositive. *Steeber v. United States*, 198 F.2d 615 (10th Cir. 1952); *United States v. Thomas*, 216 F.Supp. 942 (N.D.Cal.1963).

 It may well be that upon the development of a full evidentiary record, it will be found that the plaintiff had effectively abandoned his right to exclude. On the basis of the summary judgment affidavits, however, that cannot now be said. Reasonable expectation of privacy should be established by facts, an initial one being that of ownership. The plaintiff's affidavit established ownership and we do not conceive that his affidavit would have been aided by a self-serving, non-factual declaration that he expected privacy. On the other hand, an open and unsecured condition of the premises, also a fact, would point away from a reasonable expectation. The open and unsecured nature of the premises upon which the district court relied did not prohibit the inspector from seeing what was visible from points at which he had a right to be, but that condition per se did not justify the subsequent warrantless entry. The very conflict between the facts of ownership on the one hand and the open condition on the other creates the genuine issue of material fact concerning appellant's subjective expectations calling for evidentiary resolution.

 In addition to further factual development bearing on the plaintiff's subjective expectations, it will no doubt be pertinent to know what if any health violations were actually visible through the apartment building's open doors.[6] On remand, the district court should evaluate the evidence in light of the well established principles that warrants are usually required for searches of this type and that the Government has a significant burden in justifying a warrantless search. The requirement of a warrant would not impose an unreasonable limitation upon the ability of the appellees to perform their statutory duties, *see Camara, supra* 387 U.S. at 533, 87 S.Ct. at 1733, nor would the burden upon the agency to show the "probable cause" required for a warrant be too great, *see Barlow's, supra* 436 U.S. at 320–21, 98 S.Ct. at 1824–25 *and Camara, supra* 387 U.S. at 538, 87 S.Ct. at 1735. The inconvenience of obtaining a warrant alone, of course, is "no justification for by-passing the constitution-

6. For example, appellees' brief at one point states that standing water was visible through the open doorway prior to the young man's opening the door farther, yet the district court's opinion stated that when the young man took the official into the basement area, he pushed open the door "revealing" the water.

al requirement." *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). In short, on these facts, even a minimal showing by appellant of his objectively reasonable expectation of privacy would seem to outweigh appellees' legitimate interests in conducting a warrantless search, even in areas visible to tenants.

## II. THE SUFFICIENCY OF THE NOTICES

Appellant also objects to the notices he received from the appellees informing him of the health violations allegedly discovered and requiring certain remedial action under threat of criminal prosecution or condemnation. Appellant complains that the notices were insufficient under due process standards because they failed to inform him of his right to hearings to contest the inspection results, and that because of these omissions and other directives in the notices, he became subject to criminal prosecution and was unable to rent his properties, resulting in a loss of income.

Appellees reply that the hearing provision in the ordinance itself is sufficient notice of the right under due process standards and that personal notice is not required. Appellees also contend that regardless of any "technical violation" in the notices, appellant did not suffer any deprivation as a result. With specific regard to the Brookside duplex, appellees point out that no judicial enforcement action was instituted prior to appellant's receipt of a second notice which did inform him of a hearing. With regard to the apartment house, appellees contend that any problem appellant encountered in renting the apartments was due not so much to any directive in the notice as to the dilapidated condition of the building. Appellees note that under the ordinance, a building may be condemned only after being "placarded" by the health officer and that no "placarding" took place in this case. Appellees conclude that because there was no "condemnation," they did not deprive appellant of the use or enjoyment of his property, and thus there was no violation of due process.

In cases with issues involving the sufficiency of notices under due process standards, a starting point is *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), where the Court held:

> This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.
>
> \* \* \* \* \* \*
>
> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such a nature as reasonably to convey the required information.
>
> \* \* \* \* \* \*
>
> The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.

339 U.S. at 314–15, 70 S.Ct. at 657 (citations omitted).

In *Mullane*, the Court held that a notice to beneficiaries of a common trust fund regarding a judicial settlement of accounts published in a newspaper of general circulation was insufficient under due process standards and that personal notice was constitutionally required.

 The elements required to be included in the notice are to be tailored to the circumstances of the case and depend upon an appropriate accommodation of the competing private and governmental interests involved. The elements to be considered include the likelihood of eliciting a response and the practical difficulties of time and cost. *Id.* at 315–18, 70 S.Ct. at 657–59. In the context of this case, we have little difficulty in finding that *Mullane* and the due process clause require personal notice of the individual's right to a hearing prior to the government's depriving the individual of

any property interest, notwithstanding the "notice" provided by the public character of the ordinance itself. Nor, do we regard as sufficient the non-communicative statement in the notice that if there were any questions regarding the notice given to the plaintiff, he could call a designated telephone number. This does not strike us as meeting the *Mullane* requirement of being of "such a nature as reasonably to convey the required information," regarding the right of a hearing. When faced with a similar statement which included a telephone number to use when obtaining further information, the Supreme Court held that the notice was insufficient. *Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

■ We do not believe our holding requires appellees to issue a full "bill of rights" to the individuals subject to enforcement proceedings as appellees contend. What we require is simply what has been described as an elementary and fundamental requirement of due process. *Mullane, supra* 339 U.S. at 314, 70 S.Ct. at 657; *Memphis Light, Gas, and Water Division v. Craft, supra* 436 U.S. at 13, 98 S.Ct. at 1562. In fact, appellees have demonstrated the ease of compliance by utilizing an adequate means of notification with regard to threatened condemnations. In their notice to appellant regarding the Pennsylvania Street building, appellees warned appellant of potential condemnation simply by copying the appropriate provisions of the ordinance in the notice. This same reproduction of the hearing provisions would seem to meet due process requirements as set forth in *Mullane.*

■ We also believe it is unrealistic to require each individual to be conversant with the procedural provisions of city or county ordinances, especially where the individual is faced with a potential condemnation of his property if he misreads or is not entirely familiar with that ordinance and is not informed of his right to appear to contest the condemnation. When the individual fails to exercise the fundamental proce-

dural right to a hearing granted to him under the ordinance and required by due process because he was not informed of that right by the government authorities, we do not believe it is adequate for the government simply to rely upon the time worn adage that "ignorance of the law is no excuse." Thus, we find that appellees' notice procedure of relying upon the public character of the ordinance was not "reasonably calculated" to inform appellant of the availability of a hearing and that personal notice is required and will not impose an unreasonable burden upon the appellees. *Memphis Light, Gas and Water Div., supra; Graff v. Nicholl*, 370 F.Supp. 974, 983–84 (N.D.Ill.1974).

■ Whether the appellant has suffered a deprivation of his property interests demanding monetary compensation is, of course, a separate question and one which deserves further factual illumination for proper resolution. The appellant complains that compliance with the notices and emergency order made it impossible for him to rent the vacant apartments in the Pennsylvania building. Appellees reply and the district court "surmised" that the appellant's loss of income was not due to directives in the notice but rather to the "unfit condition" of the premises. This might well be the case, but we do not believe such a finding was properly based upon affidavits alone or was the appropriate subject of summary judgment. Summary judgment is appropriate when a rule of law as applied to uncontested facts clearly leads to a certain conclusion. Fed.R. Civ.P. 56. The burden of establishing that no genuine issues of material facts exist is upon the moving party. *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 871–72 (5th Cir. 1978). In the present case, a material conflict centers upon the cause of appellant's failure to relet the premises and the parties have presented clearly conflicting resolutions to this question. Under these circumstances, we do not believe summary judgment was appropriate and we remand for a

fuller factual determination of whether appellant suffered a deprivation of property.[7]

 It should be noted that even though a technical "condemnation" as described in the ordinance may not be accomplished absent the placarding of the premises by the Health Officer, appellant might well have suffered a deprivation. "Condemnation" as used in the ordinance requires vacation of the property within sixty days of placarding, and no reoccupation is allowed until written approval is secured from the appellee. If appellant is correct in his claim that he was inhibited from reletting the apartments by the directive in the notice and the emergency order that no occupation of the structures was to occur until the directed repairs were made and inspected, it may well be that he has suffered a deprivation of income even without a formal condemnation or placarding. Although vacation and written approval for reoccupation were not required in the notices, a deprivation may nevertheless have occurred.

## III. THE CONSTITUTIONALITY OF THE ORDINANCE

Lastly, the appellant charges that the ordinance appellees allegedly acted pursuant to is unconstitutional because it allows and even prescribes unconstitutional warrantless searches and deprivations of property without due process. The district court did not reach this claim because it held appellant suffered no constitutional violation himself and therefore it was not necessary to reach the broader constitutional question. Because the district court did not address this issue and in light of our holding above, we remand it to the district court for resolution, if necessary, in light of the considerations set forth above and in the cases of *Tyler, supra, Barlow's, supra,* and *Camara, supra.*

 One point deserves further consideration, however. Apparently for the first time before this court, appellees contend that appellant lacks standing to challenge the constitutionality of the warrantless search provisions of the ordinance because they claim they did not conduct their searches pursuant to this section at all. The section provides:

The Health Officer is hereby authorized and directed to make inspections to determine the conditions of dwellings. . . [T]he Health Officer is hereby authorized to enter, examine, and survey, at proper times upon presenting proper credentials of identification, all dwellings. . . . The owner or occupant of every dwelling . . . shall give the Health Officer access to such dwelling . . . at proper times for the purpose of such inspection.

Marion County, Indiana, General Ordinance No. 1–1968 § 2.

Appellees claim the ordinance by its terms does not apply to the situation presented here, where the owner or occupant is absent from the dwelling when the inspector arrives, but only applies to situations where the owner or occupant is present to grant access. Because the appellant was absent from the relevant premises in this case and the areas searched were unoccupied, the appellees conclude the inspectors were not acting pursuant to this provision at all, and therefore, the appellant has no standing to challenge it.

We think that the clear language of this section of the ordinance belies appellees' interpretation. The section seems plainly intended to apply to all health inspections irrespective of whether the owner or occupant is present at the dwelling. However, even assuming appellees' interpretation were correct, the appellees are then faced

---

7. Appellant also complains that he suffered a deprivation with regard to the Brookside duplex when he became subject to criminal prosecution after not requesting a hearing within ten days after receiving the initial defective notice. Even if we were to assume *arguendo* that this "deprivation" was sufficient to confer standing upon appellant, a question we need not address here, the record is clear that appellant was not subject to any prosecution until ten days had elapsed after his receipt of a second notice granting a hearing. It is difficult to understand, therefore, what deprivation appellant · suffered as a result of the original defective notice that is compensable through monetary damages.

with the difficult question of the statutory authority under which the inspectors were acting. No alternative sources of statutory authority have been suggested to us.[8] We hope problems such as this can be avoided or resolved before the district court, as with appellant's state law claims. What the situation may be with regard to consideration of the pendent claims may hinge on developments occurring with regard to the federal claims.

## IV. CONCLUSION

In sum, we hold that the district court too narrowly constrained the limitations upon what expectations of privacy may be "reasonable." Simply because property is open and unsecured does not mean the owner has abandoned all expectations of privacy with regard to it. We remand to the district court *inter alia* the issues concerning appellant's subjective expectations, what was visible through the open doors, what, if any, deprivations appellant suffered as a result of the appellees' inadequate notices, and, if necessary, the constitutionality of the ordinance. Of course, remaining issues regarding the proper measure of damages and applicable immunities should also be addressed as necessary. We also note that the action was initiated as a class action but no class was ever certified. Attention to this

aspect of the case upon remand may be appropriate.

Reversed and Remanded.

TONE, Circuit Judge, dissenting.

I believe we should affirm the judgment, which I think was correct as to both the Fourth Amendment and the procedural due process issues. My view makes it unnecessary for me to consider the constitutionality of the ordinance.

As to the Fourth Amendment issue, a few words on procedure are necessary to place what we are asked to decide in perspective. The case was decided by the district court on what amounted to cross-motions for summary judgment.[1] The plaintiff supported his motion with a short affidavit and chose to make no further showing in opposition to the motion of the defendant. So far as is relevant to the question of whether plaintiff had an expectation of privacy in the searched premises that is cognizable under the Fourth Amendment, plaintiff alleged in his affidavit only that he owned the buildings and that the tenants did not have the right to occupy the searched premises. Plaintiff's affidavit makes no reference to other matters bearing upon his expectation of privacy, though such matters were surely within his knowl-

---

**8.** At oral argument before this court, the following exchange took place:

Q. (By the court): You're saying the ordinance, section two of the ordinance, is addressed to the situation in which the occupant is present and doesn't apply to vacant properties?

A. Yes, because otherwise there is no, there really wouldn't have been any point in enacting that section of the ordinance. That's the only authority that would need to be created by the ordinance.

Q. So when you want to make your inspection, you wait until the owner is away and then you go barging in, do you?

A. That . . . what I'm saying is, is that, the validity or invalidity of these inspections does not depend upon that section of the ordinance.

Q. What authority, then, did he have to make an inspection if it wasn't under this section?

A. He had the authority to inspect the vacant area if . . .

Q. No, No . . . he's an officer. I assume he has to have some sort of ordinance authority to make an inspection. Is there another section dealing with inspections where the owner isn't present?

A. No.

Q. So he was really making an inspection without any authority at law then?

A. Well, there may be statutory authority apart from the ordinance.

Q. Well, is there?

A. I don't know.

 \* \* \* \* \* \*

Contrary to appellee's attorney's apparent belief, statutory authority is as much a requirement for a valid administrative search as is constitutional reasonableness.

**1.** Plaintiff's motion for summary judgment was filed in response to defendant's motion to dismiss the complaint. Defendant thereafter submitted affidavits to the district court, and the court treated defendant's motion to dismiss as a motion for summary judgment.

edge. It was on this record that the parties asked the district court to rule. Under these circumstances, we should decide the case on the basis of the record before us and not remand it merely because we think facts may exist outside the present record that might support plaintiff's claim. Plaintiff was required to "set forth specific facts which would demonstrate that there was a genuine issue for trial." *Heck v. Rodgers*, 457 F.2d 303, 307 (7th Cir. 1972); *see First National Bank Co. v. Insurance Co. of North America*, 606 F.2d 760, 766 (7th Cir. 1979). We are not entitled to proceed on the

> theory that factual issues sufficient to preclude disposition of a case on cross-motions for summary judgment can be "spontaneously generated" by a district court's opinion. If no issues of material fact are created by the clash of affidavits and other materials submitted by the parties in support of their motions, then the [requirement that the prevailing movant demonstrate the absence of a genuine issue as to any material fact] has been met.

*Central Oil & Supply Corp. v. United States*, 557 F.2d 511, 515 (5th Cir. 1977). *Cf. Furton v. City of Menasha*, 149 F.2d 945, 947 (7th Cir.), *cert. denied*, 326 U.S. 771, 66 S.Ct. 176, 90 L.Ed. 466 (1945). Given this, I think plaintiff has failed to allege facts from which it can be found that his Fourth Amendment rights were invaded.

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), established as the proper Fourth Amendment approach that "the Fourth Amendment protects people, not places."[2] In *Katz* the Court stated,

> The premise that property interests control the right of the Government to search and seize has been discredited.

*Id.* at 353, 88 S.Ct. at 512 (quoting *Warden v. Hayden*, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967)). Thus,

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . but what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Id.* at 351–52, 88 S.Ct. at 511. As stated in the concurring opinion of Justice Harlan,

> There is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."

389 U.S. at 361, 88 S.Ct. at 516. *See also United States v. Freie*, 545 F.2d 1217, 1223 (9th Cir. 1976), *cert. denied sub nom. Gangadean v. United States*, 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977).[3]

Under *Katz*, plaintiff was required to allege facts showing that he exhibited an expectation of privacy in the unoccupied portions of the buildings in issue in this case, as well as that the expectation was one that society would recognize as reasonable. The latter condition need not be considered because the former was not satisfied. The only allegation of fact from which an "exhibited . . . actual (subjective) expectation of privacy" can be inferred is the plaintiff's ownership of the property. Plaintiff's affidavit asserts no fact other than ownership that would indicate that he expected privacy in the disputed areas of the buildings. Thus, while he states that he has "an agreement with Wall Realty Company . . . for them to manage the . . . property," he does not state that he has given that firm any

**2.** 389 U.S. at 351, 88 S.Ct. at 511; *see id.* at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

**3.** I do not think the discursive footnote in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that is quoted in part by the majority, *ante* at 1212–1213, can be said to have changed the *Katz* analysis. Among other things, Justice Rehnquist observed in that footnote that,

> On the other hand, even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon. See *Katz, supra*, [389 U.S.] at 351, 88 S.Ct. at 511. . . .

439 U.S. at 144 n.12, 99 S.Ct. at 431.

instructions with respect to securing the premises. He does not state that he himself has made any effort to secure the premises or to post signs prohibiting entry by other persons. He does not state that he has ever visited or inspected the premises or stored any articles on the premises. Even his allegation with respect to the restricted rights of tenants at the Pennsylvania Street building does not amount to a statement that the tenants were prohibited from entering parts of the building other than their apartments. That statement is as follows:

> The tenants are given the right to occupy only their apartments and not any other or the basement of the building.

That the tenants do not have the right to occupy other areas does not mean they have no right to enter other areas. Obviously, they have the right to enter the common halls of the building, for example. If the tenants had been prohibited from entering the basement, or areas of the building other than their own apartments, presumably the plaintiff would have so stated in his affidavit.

Given the *Katz* principle that the Fourth Amendment protects people and not places, ownership unaccompanied by either occupancy or any exhibition of an expectation of privacy or an intention to assert a privacy interest should not be sufficient for Fourth Amendment protection. Here the plaintiff displayed an utter indifference to privacy. He neither occupied nor otherwise used the premises. He made no effort to lock or even shut doors or post signs. He was content to leave the premises in dispute so open to public view that the existence of some of the violations could be ascertained without entry. Under these circumstances the district court was correct in granting the defendant's motion for summary judgment.

As to Part II of the court's opinion, assuming that the effect of the challenged notices was to deprive plaintiff of a property interest, I think that nevertheless the due process requirement of procedural fairness was satisfied. Each page of each of the notices of violation that are challenged

in this case contained the following statement immediately above the signature of the complaining officer:

> If there are any questions relative to the contents of this notice, call the *Division of Public Health, 1722 City-County Building, 633–3644,* between *8:00 to 9:00 a. m., Monday* thru *Friday.*

(Emphasis in original.)

In addition, the letter fixing a shorter period than the 30 days provided in the principal notice for correction of certain health hazards on the Pennsylvania Street property stated,

> If you have any questions please contact our office at 524 East 16th Street or call 925–9821.

If plaintiff even glanced at the contents of the notices he could hardly have failed to observe that he was invited to obtain further information about the notice from the Division of Public Health at the phone number and during the hours stated. Plaintiff does not allege that he accepted that invitation but was unable to learn that he was entitled to a hearing.

The purpose of a hearing would have been to allow plaintiff to demonstrate that he was in compliance with the applicable codes. This is obvious not only from the circumstances but from the provisions of the ordinance itself. The plaintiff does not allege in his complaint or elsewhere that the conditions recited in the notices did not exist or that he was in compliance with the applicable health and safety ordinances.

In substance, plaintiff complains that he was not notified of his right to a hearing for the purpose of determining the existence of violations which he has never disputed. He makes this complaint despite advice in each notice he received to the effect that he could obtain further information about the notice by calling a given phone number during stated hours. A plaintiff who failed to take advantage of the notice he was given, and who now fails even to allege that he could have offered any proof favorable to himself at the hearing of which he was allegedly deprived, is in

a singularly poor position to claim a denial of procedural due process.[4]

It should be added that with respect to the Brookside Avenue property, the plaintiff received an additional notice giving him a time and place at which he could receive a hearing concerning the alleged violations. No action was taken against him until after the hearing date. The record does not disclose whether plaintiff took advantage of that hearing. If he had, we would presumably have been so advised. Subsequently, a criminal or quasi-criminal action was commenced against the plaintiff for the Brookside violations. This action apparently terminated when plaintiff voluntarily corrected the code violations. I can find no violation of procedural due process in this sequence of proceedings.

---

4. I would note also that, even assuming some procedural right was invaded, it appears highly unlikely on this record that plaintiff could demonstrate actual damages arising therefrom. If the code violations actually existed, and plaintiff does not allege otherwise, the only injury plaintiff sustained was the loss of a futile hearing and notice of that hearing. Under *Carey v. Piphus,* 435 U.S. 247, 255, 258–266, 98 S.Ct. 1042, 1048, 1050–54, 55 L.Ed.2d 252 (1978), this loss would entitle him to only nominal damages of one dollar.